STATE OF NORTH CAROLINA v. DARIN L. HAYNESWORTH

No. COA00-1228

(Filed 16 October 2001)

**1. Homicide— attempted first-degree murder—struggle with officer**

The trial court did not err by refusing to dismiss a charge of attempted first-degree murder for insufficient evidence where an officer responded to a call regarding an individual causing a disturbance at a church; a struggle ensued when the officer attempted to handcuff defendant; the officer's attempt to handcuff defendant was not a provocation and the officer struck defendant only after defendant struck him; several witnesses, including the officer, testified that defendant made repeated attempts to grab the officer's gun as they struggled and one stated that the officer was in a struggle for his life; defendant freed the gun from the officer's holster and pointed it at the officer upside

down, then turned the gun around and pointed it directly in the officer's face; the struggle continued and the gun fired, grazing the top of the officer's hand; and the officer's finger was not inside the trigger guard when the gun fired.

**2. Assault— on an officer with a firearm—sufficiency of evidence**

The trial court did not err by denying a defendant's motion to dismiss a charge of assault with a firearm on a law enforcement officer where there was uncontroverted evidence that the officer was in the performance of his duties when an altercation with defendant took place and that defendant was aware of the officer's status as an officer, and further evidence which, when viewed in the light most favorable to the State, shows that defendant pointed the gun directly at the officer, that the show of force was sufficient to put a person of reasonable firmness in fear of immediate physical injury, and that defendant was holding the gun when it fired as one would properly hold a pistol.

**3. Constitutional Law— double jeopardy—attempted first-degree murder—assault on an officer**

The trial court did not err by sentencing defendant separately for the crimes of attempted first-degree murder and assault with a firearm on a law enforcement officer; each offense requires proof of specific and distinct elements not required for conviction of the other.

Appeal by defendant from judgment entered 2 June 2000 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 18 September 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Amy L. Yonowitz, for the State.*

*John T. Hall for defendant-appellant.*

MARTIN, Judge.

Defendant was charged, in proper bills of indictment, with attempted first degree murder, assault with a firearm on a law enforcement officer, assault on a law enforcement officer, and resisting, delaying and obstructing an officer. A jury found him guilty as charged. He appeals from judgments entered upon the verdicts. We find no error.

STATE v. HAYNESWORTH

[146 N.C. App. 523 (2001)]

The State's evidence at trial tended to show that on 25 April 1999, Officer John R. Osborne of the Raleigh Police Department responded to a call regarding an individual causing a disturbance at a church in the Poole Road section of Raleigh as the congregation was leaving a service at about 9:30 p.m. Officer Osborne testified that he called defendant over to his patrol car so that he could talk with him. Defendant smelled of alcohol, was loud and boisterous, and was speaking unclearly. Officer Osborne informed defendant, on more than one occasion, that someone from the church had requested that he be escorted from the property and that if he did not leave, he could be arrested for trespassing. Defendant responded by stating that the church members were his brothers and sisters and that he was not going to leave. Officer Osborne then asked defendant to turn around and place his hands behind his back because he was being placed under arrest for trespassing.

The evidence tended to show that defendant began to put his left hand behind his back but then spun around and punched Officer Osborne in the mouth with his right hand. Subsequently, Officer Osborne knocked defendant to the ground by using a light sweep. Officer Osborne and other witnesses testified that after defendant was knocked to the ground, he reached for the officer's gun that was located on the officer's right hip.

While on the ground, Officer Osborne attempted to contact communications on his radio but defendant knocked the radio out of his hand. Officer Osborne continued to struggle with defendant and repeatedly attempted to push his hands away from the weapon to keep his gun secure. Officer Osborne had difficulty in restraining defendant; several times when Officer Osborne placed his hand on the weapon in an attempt to protect it, defendant struck him in the face. Officer Osborne occasionally punched defendant back. During the struggle, the two men rolled down a hill. When they reached the bottom of the hill, defendant's right hand was on Officer Osborne's holster. Then, Officer Osborne sprayed defendant in the face and inadvertently sprayed himself with pepper spray; the pepper spray appeared to have no effect on defendant but Officer Osborne was severely affected.

At that point in the altercation, Officer Osborne asked for assistance from the churchgoers witnessing the struggle. Defendant was on top of Officer Osborne and removed the gun out of the holster. Defendant was holding the butt of the gun in his hands upside down and Officer Osborne had the barrel in his hands attempting to keep it

out of his face. Officer Osborne eventually managed to flip over onto his stomach and keep at least one hand on the weapon. Defendant had turned the gun around so that he was holding the weapon properly or right side up and was pointing it at Officer Osborne. Officer Osborne then grabbed the slide in an effort to keep the weapon from firing. Officer Osborne pushed the weapon to the ground while his left hand was out in front of the weapon about 18 to 20 inches. When Officer Osborne tried to get up from being on all fours, the weapon fired and grazed the top of Officer Osborne's left hand, striking his knuckle on his index finger and the top of his pinky finger. Officer Osborne testified that when the gun was fired, defendant had his hands on the gun and was holding it properly. Further, the State's evidence showed that Officer Osborne's finger or hand was not inside the trigger guard when the pistol fired. The officer realized that his hand was still operable and grabbed the weapon with both hands and pulled it close to his body. Officer Osborne managed to get the weapon completely out of defendant's hands; he then stood up and spun around, causing defendant to fall off his back. The weapon fell out of Officer Osborne's hands down into the grass.

Officer Osborne secured the weapon and attempted to place handcuffs on defendant but because the officer was exhausted from the struggle, he was unable to place defendant on his stomach and secure defendant's hands behind his back. Officer Osborne moved away from defendant, drew the weapon out of his holster, and pointed the pistol towards the ground, while telling defendant to turn over on his stomach and place his hands behind his back. At that point, defendant got up and ran and eventually crawled underneath a car. When Officer Osborne told defendant to come out from underneath the vehicle, defendant got out from under the car and ran. Officer Osborne tackled defendant and with assistance from two other Raleigh police officers who had arrived, finally restrained and handcuffed defendant. Officer Osborne received treatment from Emergency Medical Services at the scene.

Defendant testified that he struck Officer Osborne because he thought the officer was trying to "rough [him] up" and he didn't understand why he was being arrested because he had not done anything wrong. He denied that he was trying to grab the gun in order to shoot Officer Osborne, and claimed that he was acting in self-defense by trying to keep Officer Osborne from drawing his weapon from the holster. Defendant denied ever trying to kill Officer Osborne.

I.

**[1]** Defendant first assigns error to the trial court's failure to dismiss, for insufficiency of the evidence, the charge of attempted first degree murder at the close of all of the evidence. Defendant contends that the evidence gives rise to no more than a surmise, suspicion, or conjecture that defendant is guilty of attempted first degree murder.

The North Carolina Supreme Court has set forth the standard for reviewing the denial of a motion to dismiss in *State v. Bates*, 313 N.C. 580, 581, 330 S.E.2d 200, 201 (1985):

> A defendant's motion for dismissal for insufficiency of the evidence in a criminal case raises the question of whether there is substantial evidence of each essential element of the offense charged, or of a lesser offense included therein, and of the defendant's being the perpetrator of such offense. In determining this issue the court must consider the evidence in the light most favorable to the state, and the state is entitled to every reasonable inference to be drawn therefrom. If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, a case for the jury is made and a motion to dismiss should be denied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion [citations omitted].

Evidence is not substantial if it arouses only a strong suspicion about the facts to be proved. *State v. Malloy*, 309 N.C. 176, 305 S.E.2d 718 (1983). When considering a motion to dismiss, the trial court "is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Any contradictions or discrepancies in the evidence are for resolution by the jury and do not warrant dismissal. *Id.*

"The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996). Specifically, this Court has previously stated that

> a person commits the crime of attempted first-degree murder if: (1) he or she intends to kill another person unlawfully and (2) acting with malice, premeditation, and deliberation does an overt act

calculated to carry out that intent, which goes beyond mere preparation, but falls short of committing murder.

*State v. Gartlan*, 132 N.C. App. 272, 275, 512 S.E.2d 74, 77, *disc. review denied*, 350 N.C. 597, 537 S.E.2d 485 (1999); N.C. Gen. Stat. § 14-17 (1999).

The overt act required for an attempted crime must be more than preparation in that it "reach[es] far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *State v. Price*, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971). A killing has been defined as premeditated if the defendant formed a specific intent to kill the victim some period of time, regard-, less of how short, before perpetrating the actual act. *State v. Gainey*, 343 N.C. 79, 468 S.E.2d 227 (1996). In addition, deliberation has been defined as acting in a cool state of blood and not under the influence of a violent passion. *Id.*

In the context of attempted first degree murder, circumstances that may tend to prove premeditation and deliberation include: (1) lack of provocation by the intended victim or victims; (2) conduct and statements of the defendant both before and after the attempted killing; (3) threats made against the intended victim or victims by the defendant; and (4) ill will or previous difficulty between the defendant and the intended victim or victims. *State v. Myers*, 299 N.C. 671, 677-78, 263 S.E.2d 768, 773 (1980). We hold that in this case, there was sufficient evidence of each element of attempted first degree murder and that defendant was the perpetrator.

Defendant contends that the evidence showed there was physical provocation by Officer Osborne when he grabbed defendant's arm and therefore, there was insufficient evidence to show premeditation and deliberation. We disagree. After being called about a disturbance at a church, Officer Osborne made several attempts to get defendant to leave the premises, but defendant refused. Officer Osborne then advised defendant that he was being placed under arrest for trespassing and instructed him to place his hands behind his back. Officer Osborne proceeded to begin the handcuffing process by taking hold of defendant's left elbow. It is this act that defendant argues was provocation, but we hold the officer's attempt to handcuff defendant clearly did not constitute provocation. Though Officer Osborne did punch defendant during the altercation, it was only after defendant had struck him. The evidence shows that the officer was acting in self-defense and did not provoke defendant in any way.

Moreover, the evidence shows that defendant acted with premeditation and deliberation. The evidence, when viewed in the light most favorable to the State, showed that this was not a situation in which a gun accidentally discharged. One of the witnesses stated, "[t]he police officer was engaged at that particular time in what I considered a struggle for his life. I saw a man struggling for his life . . . . I saw an individual in a very, very asserted effort trying to take the officer's gun from him." Furthermore, several witnesses, including Officer Osborne, testified that defendant made repeated attempts to grab the gun out of the holster. After being successful in freeing the gun from the holster, defendant pointed the gun at the officer while it was upside down. Defendant then managed to turn the gun around so that he was holding it in the proper position and pointed the weapon directly in the officer's face. The struggle continued between Officer Osborne and defendant until the gun was fired, grazing the top of the officer's left hand. Officer Osborne testified that when the gun was fired, defendant "was holding the gun as you would properly hold a pistol." Further, Officer Osborne's finger or hand was not inside the trigger guard when the gun fired. Therefore, the evidence, when viewed in the light most favorable to the State, showed that defendant intended to grab the gun, pointed the gun in the direction of the officer, and discharged the gun, striking the officer in the hand. This evidence is sufficient to support a finding of premeditation and deliberation on the part of defendant. Therefore, the trial court did not err in denying defendant's motion to dismiss the charge of attempted first degree murder at the close of all the evidence.

## II.

[2] We also reject defendant's assignment of error directed to the trial court's denial of his motion to dismiss, for insufficiency of the evidence, the charge of assault with a firearm on a law enforcement officer. G.S. § 14-34.5 makes it illegal for any person to commit, "an assault with a firearm upon a law enforcement officer . . . while the officer is in the performance of his or her duties . . . ." For this offense, the State must prove that defendant knew the victim was a law enforcement officer. *State v. Rowland*, 54 N.C. App. 458, 283 S.E.2d 543 (1981). The word assault has been defined as an overt act or attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or violence must be sufficient to put a person of reasonable firmness in fear of immediate physical injury. *State v. Roberts*, 270 N.C. 655, 155 S.E.2d 303 (1967).

In the present case, there was uncontroverted evidence that Officer Osborne was in the performance of his duties when the altercation with defendant took place and that defendant was aware of Osborne's status as a law enforcement officer. Defendant argues, though, that the evidence was lacking on the element of assault. We disagree.

The evidence, when viewed in the light most favorable to the State, shows that defendant pointed the gun directly at Officer Osborne. Officer Osborne testified, "I looked down and the weapon was pointing right up at me. He was holding the weapon properly." In addition, one of the eyewitness's account of the scene was that it was a matter of life and death for the officer. The evidence showed that Officer Osborne feared immediate physical injury by his repeated attempts to keep defendant from firing the gun by struggling to keep defendant from removing the gun from the holster and holding the slide of the gun. Thus, the show of force was sufficient to put a person of reasonable firmness in fear of immediate physical injury. Finally, Officer Osborne testified that when the gun was fired, defendant "was holding the gun as you would properly hold a pistol." Therefore, we hold there was substantial evidence, viewed in the light most favorable to the State, to show that defendant committed an assault with a firearm on Officer Osborne, that he was aware that Officer Osborne was a law enforcement officer, and that Officer Osborne was in the performance of his duties at the time.

### III.

[3] Defendant next assigns error to the trial court's sentencing him separately for the crime of assault with a firearm on a law enforcement officer. Defendant argues that offense had merged with the conviction for attempted first degree murder of the same officer, and that, by entering separate sentences for each offense, the trial court violated his constitutional right not to be punished twice for the same offense. We disagree.

The prohibition against "multiple punishments" contained in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevents the imposition of multiple punishments for the same offense. *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986). When the same act or transaction constitutes a violation of two criminal statutes, the test to determine whether there are two separate offenses is whether each statute requires proof of a fact which the

other does not. *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932).

> If what purports to be two offenses actually is one under the *Blockburger* test, double jeopardy prohibits successive prosecutions, . . . (citations omitted) but, as was made clear in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), double jeopardy does not prohibit multiple punishment for offenses when one is included within the other under the *Blockburger* test if both are tried at the same time and if the legislature intended for both offenses to be separately punished . . . . **When each statutory offense has an element different from the other, the *Blockburger* test raises no presumption that the two statutes involve the same offense** (emphasis supplied).

*Gardner* at 454-55, 340 S.E.2d at 709. The fact that each crime requires proof of an element which the other does not demonstrates the intent of the General Assembly to allow multiple punishments to be imposed for the separate crimes. *State v. Swann*, 322 N.C. 666, 370 S.E.2d 533 (1988).

The elements required for conviction of first degree murder are (1) the unlawful killing of another human being; (2) with malice; and (3) with premeditation and deliberation. N.C. Gen. Stat. § 14-17; *State v. Bonney*, 329 N.C. 61, 405 S.E.2d 145 (1991). As noted above, the elements required for conviction of the crime of assault with a firearm on a law enforcement officer are (1) an assault; (2) with a firearm; (3) on a law enforcement officer; (4) while the officer is engaged in the performance of his or her duties. N.C. Gen. Stat. § 14-34.5. Each offense requires proof of specific and distinct elements not required to be proved for conviction of the other. Therefore, we hold cumulative punishment does not violate double jeopardy principles and defendant was properly sentenced separately for each offense. This assignment of error is overruled.

No error.

Judges WALKER and TYSON concur.