STATE OF NORTH CAROLINA v. PAUL EMMANUEL PELHAM

No. COA03-636

(Filed 4 May 2004)

**1. Assault— defense of habitation—instruction—assault with firearm on law enforcement officer**

Although the trial court erred in an assault with a deadly weapon with intent to kill inflicting serious injury, assault with a firearm on a law enforcement officer, and drug case by failing to

give defendant's requested instruction on the defense of habitation in a situation where officers possessed a search warrant, defendant was awakened by the officers' distraction device, and defendant as well as other witnesses maintained that they never heard the officers' warning that they were from the sheriff's department and had a search warrant, this assignment of error is dismissed as harmless error because: (1) by finding defendant guilty of assault with a firearm on a law enforcement officer, the jury necessarily concluded that defendant was aware or had reasonable grounds to be aware of the officers' identity and further concluded that they were acting within the scope of their authority; and (2) the defense of habitation has no applicability to the facts as found by the jury since the defense does not apply unless the entry is unlawful.

**2. Assault— assault on law enforcement officer—motion to dismiss—sufficiency of evidence**

The trial court did not err by failing to dismiss the assault on a law enforcement officer indictments even though defendant contends there was a variance regarding the evidence for the phrase "by shooting at him," because: (1) allegations beyond the essential elements of the offense are irrelevant and may be treated as surplusage and disregarded when testing the sufficiency of the indictment; and (2) the Court of Appeals has previously held that the phase "to wit: by shooting him with said pistol" in an indictment for this charge was surplusage and should be disregarded, and the present indictment is so similar that a similar outcome is dictated.

**3. Search and Seizure— validity of warrant—failure to show false statements**

Defendant failed to show that a search warrant was invalid on the ground that the affiant knowingly or recklessly made a false statement in the affidavit where defendant merely denied what the confidential informant and the officer-affiant asserted.

**4. Search and Seizure— execution of warrant—knock and announce—failure to object—not ineffective assistance of counsel**

While officers may not have knocked on defendant's door before they used a battering ram to open the door while executing a search warrant, they had announced their presence and pur-

pose and thus complied with the requirements of the "knock and announce" statute, N.C.G.S. § 15A-249. Therefore, the failure of defendant's counsel to contest the method of execution of the warrant did not constitute the ineffective assistance of counsel.

### 5. Sentencing— mitigating factors—offense committed under strong provocation

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury, assault with a firearm on a law enforcement officer, and drug case by failing to find that defendant acted under extreme provocation, because: (1) defendant's argument assumes that his version of the facts supports a finding of provocation; and (2) the jury, in finding defendant guilty, credits the officers' version of the facts and necessarily rejects defendant's allegations.

Appeal by defendant from judgments entered 29 October 2002 by Judge James Floyd Ammons, Jr., in Brunswick County Superior Court. Heard in the Court of Appeals 1 March 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant appellant.*

McCULLOUGH, Judge.

The defendant was tried at the 14 October 2002 Criminal Term of Brunswick County Superior Court on indictments which charged assault with a deadly weapon with intent to kill inflicting serious injury; three counts of assault with a firearm on a law enforcement officer; possession with intent to manufacture, sell or deliver cocaine and marijuana; maintaining a place for keeping controlled substances; and possession of drug paraphernalia. Having been found guilty, he was sentenced to a term of 125 to 159 months on the assault with intent to kill indictment, followed by 35-53 months on each of the assault with a firearm on a law enforcement officer charges, all being consecutive to one another, and one concurrent term of 6 to 8 months on the consolidated drug convictions.

The evidence at trial tended to show that Brunswick County Deputy Sheriff Clint Simpson was investigating the use and sale of drugs at 326 Van Galloway Trail near Winnabow, defendant's resi-

dence, in September 2001. Deputy Simpson used a reliable confidential informant who had purchased drugs from defendant in the past to make a controlled purchase of a gram of crack cocaine from defendant for $60 on 3 October 2001. On Friday, 5 October 2001, Deputy Simpson obtained a search warrant for defendant's residence, a single-wide trailer. The warrant was executed that night. Having been warned that defendant was normally armed, the Sheriff's Department Emergency Response Team was used to enter the trailer. The officers were deployed to the front and rear of the trailer.

Deputy Simpson's team, dressed in camouflage or subdued clothing, displaying badges and "SHERIFF" printed on their outer clothing, lay in the woods behind defendant's trailer from approximately 9:30 p.m. until around 10:30 p.m. when the other half of the team arrived in a van which proceeded up defendant's driveway, stopping near the front door. These officers were dressed in black tactical gear with "SHERIFF" printed in bright yellow or white lettering, front and back.

The two teams simultaneously approached the trailer, deploying a distraction device sometimes called a "flash/bang." Both groups then began yelling, "Sheriff's Department, search warrant." Simpson unsuccessfully attempted to enter through the rear door, which was locked. At that point, one of the occupants, Atari Thomas, jumped out of a rear window, firing three shots at the officers while running away. The officers approaching the front door had seen Mr. Thomas peering out the front window at them as they approached. Finding the front door locked, these officers used the battering ram to effect entry after around three blows to the door. The kitchen and living room lights were on and two officers went to the right and another two went left. Deputies Lanier and Smith went left to check out the rear master bedroom. As Deputy Lanier reached the bedroom he heard gunfire outside. He then moved the sheet covering the doorway and with his gun drawn made a sweep across the room. At that point Deputy Lanier saw a large silver gun and the silhouette of a black male, defendant, who then shot Deputy Lanier in the neck and hand. Lanier returned fire toward the gun. Deputy Smith saw the revolver held by defendant and observed defendant fire twice at his partner from near the bathroom door at which time he fired his shotgun.

Deputy Smith provided covering fire as Deputy Lanier crawled to safety. Deputies Cain and Evans both saw defendant point his weapon at them as they joined Smith. Defendant refused to obey orders from the officers to come out, and defendant continued to hide in the bath-

room, occasionally peeking out at the deputies. Eventually he did come out and surrender after the officers fired at him severely wounding him. Deputy Smith seized marijuana from defendant's pants pocket. Deputy Simpson then executed the search warrant and recovered marijuana, cocaine, cutting agents, scales and money as well as defendant's pistol. Two marijuana plants were found growing in the backyard.

Deputy Lanier was taken to the hospital in Wilmington where he was treated for his gunshot wounds. The shot to his neck injured his spinal nerves, punctured his lungs and exited his back. The gunshot wound to his right hand fractured a finger and caused nerve damage. Despite two surgeries, Deputy Lanier still suffers a permanent disability due to the loss of nerve functions.

Defendant, a convicted felon who is prohibited from possessing firearms, testified at trial that he did not know who had entered his trailer, having been asleep at the beginning of the raid. He claimed to have been awakened by the shots fired in the backyard and the distraction device. Fearing that he was being robbed, he admitted firing at the first white face he saw, whereupon he hid in the bathroom yelling, "who y'all," until the officers' return fire caused him to surrender. He denied he heard anyone yelling "Sheriff's Department, search warrant" or any similar words. He claimed that he first realized the intruders were police officers when he heard one of them say, "You shot my partner." He further denied meeting the confidential informant the day before (even though the confidential informant testified at trial as to the controlled delivery). Defendant also called some relatives and neighbors as witnesses who testified that they heard the gunfire but never heard anyone yelling, "Sheriff's Department, search warrant" prior to the shooting.

On appeal defendant raises the following issues: (I) the trial court erred by failing to give defendant's requested instruction on the defense of habitation; (II) the trial court erred by failing to dismiss the assault on law enforcement officer indictments due to a variance; (III) defendant's motion to suppress should have been granted; and (IV) the trial court should have found that defendant acted under extreme provocation and sentenced him in the mitigated range.

For the reasons which follow, we reject defendant's arguments and believe he had a fair trial, free from prejudicial error.

## I. DEFENSE OF HABITATION

**[1]** At the conclusion of the trial the court and counsel engaged in an extensive charge conference during which counsel for defendant requested a jury instruction on both self-defense and defense of habitation. The trial court agreed to give the self-defense instruction but refused the defense of habitation instruction.

The defense of habitation is codified at N.C. Gen. Stat. § 14-51.1 (2003) which provides:

>    (a) A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.

>    (b) A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.

The statute had the effect of broadening the defense of habitation by allowing deadly force to be used to prevent unlawful entry into the home or to terminate an unlawful entry by an intruder. *State v. Blue*, 356 N.C. 79, 82, 565 S.E.2d 133, 135 (2002). In determining whether the defense has been raised by the evidence, competent evidence in the record must be evaluated in the light most favorable to defendant. *State v. Morgan*, 315 N.C. 626, 636, 340 S.E.2d 84, 91 (1986).

Defendant argues that his testimony wherein he claimed that he did not hear the warning "Sheriff's Department, search warrant," buttressed by his other witnesses who maintained that they never heard these warnings, coupled with the officers' description of the events surrounding the search sufficiently raised the defense so that the instruction should have been given. It was uncontested that the officers possessed a search warrant and the evidence was uncontradicted that defendant was awakened by the distraction device.

Given defendant's testimony, and its evaluation in the light most favorable to defendant as required, we agree that the evidence justified the giving of the instruction.

Having concluded that the defense of habitation instruction should have been given, might, in the ordinary case, end our analysis. However, in the case *sub judice* defendant was also charged with assault with a firearm on a law enforcement officer in violation of N.C. Gen. Stat. § 14-34.5(a) (2003) which provides:

> Any person who commits an assault with a firearm upon a law enforcement officer, probation officer, or parole officer while the officer is in the performance of his or her duties is guilty of a Class E felony.

The elements of the offense are: (1) an assault, (2) with a firearm, (3) on a law enforcement officer, (4) while the officer is engaged in the performance of his or her duties. *State v. Haynesworth*, 146 N.C. App. 523, 553 S.E.2d 103 (2001). Furthermore, our Courts have determined that this charge also requires that the State prove that defendant knew or should have known that the victim was an officer performing his official duties. *See State v. Avery*, 315 N.C. 1, 30-31, 337 S.E.2d 786, 803 (1985); *State v. Page*, 346 N.C. 689, 699, 488 S.E.2d 225, 232 (1997), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998). The knowledge requirement has been imposed although the underlying statute is silent on the issue. In the case at bar the jury was properly instructed regarding all of the above elements, including knowledge, before making a finding of guilty on the assault with a firearm on a law enforcement officer indictments.

Here, there was ample evidence to sustain such a finding. It is uncontradicted that the officers set off a distraction device or "flash/bang" at the outset of the raid. The officers testified that they then yelled "Sheriff's Department, search warrant" prior to their approach to the door. While defendant denied he heard them, the jury is not required to credit his denial and evidently assessed his credibility as lacking on this point. It is also uncontested that the officers were dressed in tactical clothing which plainly marked them as members of the Sheriff's Department.

The trial court instructed the jury as follows:

> Now, as to each of these three charges, you will have the following choices. To find the defendant guilty of assault with a firearm on a law enforcement officer, and then the named officer; or, assault—I'm sorry—guilt of assault by pointing a gun; or, not guilty.

**STATE v. PELHAM**

[164 N.C. App. 70 (2004)]

The defendant has been accused of assault with a firearm on a law enforcement officer, three counts. Now, I charge that for you to find the defendant guilty of any of these three counts, the State must prove five things beyond a reasonable doubt. As I said before, they must prove those five things in each of those separate three counts which you will consider separately.

First, that the defendant assaulted the victim intentionally and without justification or excuse, by pointing a firearm at him, or by discharging a firearm at him, or both.

Second, that the assault was committed with a firearm.

Third, that the victim was a law enforcement officer.

Fourth, that the defendant knew or had reasonable grounds to know that the victim was a law enforcement officer.

And fifth, that the victim was in the performance of his duties. Executing or serving a search warrant is a duty.

Now, the defendant's actions are excused and he is not guilty if he acted in self-defense. The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant's action was not in self-defense. If you find from the evidence beyond a reasonable doubt that the defendant assaulted the victim with deadly force, that is, force likely to cause death or great bodily harm, and that the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or apparently necessary to protect himself from death or great bodily harm, and the circumstances did create such a belief in the defendant's mind at the time he acted, such an assault would be justified by self-defense.

You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to him at the time. A defendant does not have the right to use excessive force. He had the right to use only such force as reasonably appeared necessary to him under the circumstances, to protect himself from death or great bodily harm. In making this determination, you should consider the circumstances as you find them to have existed from the evidence, including the size of the defendant as compared to the victim, the fierceness of the assault, if any, upon the defendant, whether or not the victim had a weapon in his possession. Again, you, the jury, determine the reasonable-

ness of the defendant's belief from the circumstances appearing to him at the time.

So, I charge that in regard to these three charges of assault with a firearm on a law enforcement officer which you will consider separately, if you find from the evidence beyond a reasonable doubt that on or about the alleged date of October the 5th, the defendant intentionally assaulted with a firearm the victim, who was a law enforcement officer, in the performance of his duties, and the defendant knew or had reasonable grounds to know that the victim was a law enforcement officer, it would be your duty to return a verdict of guilty.

However, if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of assault on a law enforcement officer with a firearm. If you do not find the defendant guilty of assault with a firearm on a law enforcement officer, you must determine whether he is guilty of assault by pointing a gun in any of the three charges. If in any of those three charges you do not find the defendant guilty of assault with a firearm on a law enforcement officer, you will then determine whether he is guilty of the lesser included offense of assault by pointing a gun.

By finding defendant guilty of these offenses the jury necessarily concluded that defendant was aware, or had reasonable grounds to be aware, of the officers' identity and further concluded that they were acting within the scope of their authority. As the defense of habitation does not apply unless the entry is unlawful it had no applicability to the facts as found by the jury. We therefore find that the failure to give the instruction under the circumstances of this case was harmless. Defendant's assignment of error is thus overruled.

## II. FAILURE TO DISMISS ASSAULT WITH A FIREARM ON LAW ENFORCEMENT OFFICER INDICTMENTS

[2] As noted earlier, defendant was charged in three separate indictments with the offense of Assault With a Firearm On A Law Enforcement Officer in violation of N.C. Gen. Stat. § 14-34.5 which is set forth above.

Each indictment read as follows with the only difference being the name of the victim:

THE JURORS for the State upon their oath present that on or about the 5th day of October 2001, and in the county named

above the defendant named above unlawfully, willfully, and felo-
niously did assault Mickey Smith, a law enforcement officer of
the Brunswick County Sheriff's Department, with a firearm, by
shooting at him. At the time of this offense the officer was per-
forming a duty of investigating illegal use of narcotics at the resi-
dence of 326 Van Galloway Trail, Winnabow, against the form of
the statute in such case made and provided and against the peace
and dignity of the State.

Defendant argues that the phrase "by shooting at him" was not borne
out by the evidence. Instead, the evidence at trial established that
after shooting Deputy Lanier, defendant did not shoot at any other
officer. Thus, defendant argues a fatal variance occurred which
requires dismissal as the evidence did not conform to the allegations
in the indictment. *State v. Wall*, 96 N.C. App. 45, 49, 384 S.E.2d 581,
583 (1989).

An indictment must set forth each of the essential elements of the
offense. *State v. Poole*, 154 N.C. App. 419, 422, 572 S.E.2d 433, 436
(2002), *cert. denied*, 356 N.C. 689, 578 S.E.2d 589 (2003). Allegations
beyond the essential elements of the offense are irrelevant and may
be treated as surplusage and disregarded when testing the sufficiency
of the indictment. *State v. Taylor*, 280 N.C. 273, 276, 185 S.E.2d 677,
680 (1972). To require dismissal any variance must be material and
substantial and involve an essential element. *State v. Pickens*, 346
N.C. 628, 488 S.E.2d 162 (1997).

In the case of *State v. Muskelly*, 6 N.C. App. 174, 177, 169 S.E.2d
530, 532 (1969), this Court held that the phrase "to wit: by shooting
him with said pistol" was surplusage and should be disregarded. The
indictment, being otherwise proper, was upheld. We find the present
indictment is so similar to *Muskelly*, that a similar outcome is dic-
tated. Accordingly, this assignment of error is also overruled.

### III. MOTION TO SUPPRESS

[3] Defendant contended in a pretrial motion that the search warrant
affidavit lacked probable cause to support the issuance of a warrant.
The pertinent portion of the affidavit stated:

ON AUGUST 5, 2001 AFFIANT MET WITH A CONFIDENTIAL
SOURCE OF INFORMATION, HEREAFTER REFERRED TO AS
CS1. CS1 STATED THAT THEY KNEW OF A BLACK MALE
NAMED PAUL PELHAM WHO LIVED ON VAN GALLOWAY TRAIL
IN WINNABOW OFF OF HIGHWAY 87. CS1 STATED TO AFFIANT

STATE v. PELHAM

[164 N.C. App. 70 (2004)]

THAT THEY KNEW OF PELHAM TO SELL CRACK COCAINE FROM HIS RESIDENCE. CS1 ALSO STATED THAT THEY KNEW OF ANOTHER BLACK MALE NAMED ATARI THOMAS WHO APPARENTLY STAYED WITH PELHAM. CS1 STATED THAT THOMAS WILL SELL CRACK COCAINE OR MARIJUANA FROM THE RESIDENCE. CS1 FURTHER MENTIONED THAT ANOTHER BLACK MALE CALLED J.R. SEEMED TO BE AT THE RESIDENCE ALL THE TIME AND THAT HE TOO SOLD CRACK COCAINE VERY FREQUENTLY. CS1 STATED THAT THEY HAVE ENGAGED IN DRUG TRANSACTIONS WITH ALL THREE OF THE SUBJECTS MENTIONED. CS1 HAS KNOWN OF THE THREE SUBJECTS FOR A WHILE AND STATED THAT PELHAM HAS A GOLDISH COLORED, OLDER CADILLAC WITH MAG RIMS WHILE THOMAS HAS A BLACK NEW LOOKING SMALL CAR WITH MAG RIMS. CS1 STATED THAT J.R. HAS A BICYCLE. CS1 STATED THAT THE RESIDENCE THAT THE SUBJECTS SELL DRUGS FROM IS AN OLDER SINGLE WIDE MOBILE HOME THAT IS TAN IN COLOR WITH A LARGE FRONT PORCH LEADING TO THE FRONT DOOR. CS1 STATED THAT THEY THINK THE ADDRESS IS 326 VAN GALLOWAY TRAIL. CS1 STATED THAT THERE ARE APPROXIMATELY SIX (6) PIT BULL TYPE DOGS IN THE YARD AND THAT THEY ARE USUALLY TIED UP SECURELY. CS1 STATED THAT THE VEHICULAR TRAFFIC TO AND FROM THE RESIDENCE IS HEAVY TO SAY THE LEAST. CS1 STATED THAT THE DRUG SALES ARE ALL HOURS OF THE DAY AND NIGHT.

ON AUGUST 5, 2001 AFFIANT ISSUED CASH TO CS1 FOR THE PURPOSE OF MAKING A CONTROLLED PURCHASE OF COCAINE FROM THE RESIDENCE MENTIONED. AFFIANT THEN SEARCHED CS1 AS WELL AS THE CONVEYANCE USED. AFFIANT THEN DISPATCHED CS1 TO THE MENTIONED RESI-DENCE. CS1 WAS OBSERVED GOING TO THE RESIDENCE BY AFFIANT. AFTER A BRIEF TIME AT THE RESIDENCE, CS1 LEFT AND AFFIANT FOLLOWED THEM BACK TO THE STAG-ING AREA. CS1 THEN GAVE TO AFFIANT A QUANTITY OF COCAINE. AFFIANT THEN SEARCHED CS1 AND THE CON-VEYANCE USED.

AFFIANT THEN DEBREIFED [sic] CS1 AND WAS INFORMED THAT THEY HAD MADE THE TRANSACTION WITH PELHAM AT THE RESIDENCE. CS1 WAS THEN RELEASED.

STATE v. PELHAM

[164 N.C. App. 70 (2004)]

WITHIN THE LAST 48 HOURS, AFFIANT AGAIN MET WITH CS1. CS1 WAS AGAIN ISSUED CASH FROM AFFIANT, SEARCHED AND DISPATCHED TO THE RESIDENCE MENTIONED. CS1 WAS AGAIN OBSERVED GOING TO THE RESIDENCE AND LEAVING AFTER A SHORT TIME. CS1 WAS THEN MET BY AFFIANT AT THE STAGING AREA WHERE A QUANTITY OF COCAINE WAS TURNED OVER TO AFFIANT BY CS1. ONCE AGAIN CS1 STATED THAT THEY RECEIVED THE COCAINE AT THE RESIDENCE. CS1 WAS THEN SEARCHED AGAIN AND RELEASED.

ALONG WITH THE TWO SEPARATE [sic] CONTROLLED BUYS OF COCAINE FROM THE RESIDENCE, AFFIANT AND OTHER MEMBERS OF THE DRUG ENFORCEMENT UNIT HAVE RECEIVED NUMEROUS PHONE-IN COMPLAINTS REGARDING THE DRUG ACTIVITY AT THE MENTIONED LOCATION. SOME OF THE COMPLAINTS WERE FROM ANGERED EYE WIT-NESSES [sic] TO THE TRANSACTIONS. AGENTS FROM THE DRUG UNIT ALSO HAVE WORKED THE VAN GALLOWAY ROAD AREA ON NUMEROUS OCCASIONS AND HAVE PERFORMED VEHICLE STOPS RESULTING IN THE ARRESTS OF SEVERAL PEOPLE WITH ILLEGAL DRUGS THAT THEY STATED WERE OBTAINED FROM PAUL PELHAM'S TRAILER.

Defendant's own affidavit constituted a mere denial that the confidential informant had gone to defendant's residence prior to the search in order to purchase cocaine.

To be entitled to a hearing on the truth of the factual allegations contained in the search warrant, defendant must preliminarily show that the affiant knowingly or recklessly made a false statement in the affidavit. *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997). *See also* N.C. Gen. Stat. § 15A-978 (2003). Contradicting evidence does not support the motion and it can accordingly be denied summarily, *State v. Langdon*, 94 N.C. App. 354, 357, 380 S.E.2d 388, 390 (1989), as was done in this case. We note that the confidential informant also testified at trial to the same events set forth in the affidavit. While defendant denies what the confidential informant and the officer assert, his denial is insufficient to make a showing of falsity or recklessness requiring suppression. It is also clear from the record before us that the court properly denied the motion summarily.

[4] At trial the defense counsel did not contest the method of the execution of the warrant. Accordingly, the issue is not directly preserved

for appellate review. *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). The appellant then argues that this failure to attack the execution of the warrant demonstrates that trial counsel was ineffective.

We review ineffective assistance of counsel claims under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696 (1984), and adopted by our Supreme Court. To prevail, a defendant must show that counsel's performance fell below an objective standard of reasonableness given a strong presumption that the assistance was within professional norms and that counsel's errors were so serious that there exists a reasonable probability that the result would have been different absent the error. *State v. Mason*, 337 N.C. 165, 177, 446 S.E.2d 58, 65 (1994). Obviously, the failure to object to admissible evidence cannot constitute ineffective assistance of counsel.

The State argues that the officers had probable cause to believe that giving notice would endanger those serving the warrant and their failure is thus excused pursuant to N.C. Gen. Stat. § 15A-251. Here, it is clear that the officers set off a distraction device prior to attempting entry. Although defendant denies hearing them, all of the participants in the raid stated that they approached the trailer yelling "Sheriff's Department, search warrant" prior to breaking down the door. While they may not have knocked on the door, the officers certainly had announced their presence and purpose, thus complying with the requirements of the "knock and announce statute." N.C. Gen. Stat. § 15A-249 (2003).

The record establishes sufficient facts to show that any motion to suppress would have been unlikely to succeed and the failure to object could not have constituted ineffective assistance of counsel. *See State v. Lyons*, 340 N.C. 646, 670, 459 S.E.2d 770, 783 (1995).

This assignment of error is therefore overruled.

IV. FAILURE TO SENTENCE IN THE MITIGATED RANGE

[5] Finally, defendant argues that the trial court was obligated to find as a mitigating factor that the offense was committed under "strong provocation" as defined in N.C. Gen. Stat. § 15A-1340.16(e)(8) (2003), where this is defined as follows: "The defendant acted under strong provocation, or the relationship between the defendant and the victim was otherwise extenuating." An extenuating relationship would exist when the victim was in part responsible for the offense. *State v.*

*Mixion,* 110 N.C. App. 138, 152-53, 429 S.E.2d 363, 391, *disc. review denied,* 334 N.C. 437, 433 S.E.2d 183 (1993). Strong provocation means the defendant did not act in a state of "cool [] blood." *State v. Deese,* 127 N.C. App. 536, 538-39, 491 S.E.2d 682, 685 (1997).

The trial court's failure to find a mitigating factor will not be overturned unless the evidence at sentencing is uncontradicted, substantial, and there is no reason to doubt its credibility. *State v. Jones,* 309 N.C. 214, 306 S.E.2d 451 (1983).

Defendant's argument assumes that his version of the facts supports a finding of provocation. The facts, as established by the jury, however, contradict the very underpinnings of his argument. For this finding to be mandated, it must have been established that the officers were somehow responsible for the incident or that defendant acted under provocation. However, the jury, in finding defendant guilty, credits the officers' version of the facts and necessarily rejects defendant's allegations. As these issues were resolved against defendant at trial, he cannot maintain his entitlement to this mitigating factor.

Accordingly this assignment of error is likewise overruled. For the reasons set forth we find defendant's trial was conducted free of prejudicial error.

No error.

Judges WYNN and LEVINSON concur.