STATE OF NORTH CAROLINA v. BELINDA LORRAINE WILSON

No. COA06-452

(Filed 6 February 2007)

## 1. Child Abuse and Neglect— intentional child abuse—evidence sufficient

The State's evidence was sufficient for the jury to find that defendant intentionally inflicted injuries upon her child so as to support defendant's conviction of felonious child abuse inflicting serious injury where it tended to show that the child received burns from scalding and cigarettes, suffered from a subdural hematoma, and showed signs of undernourishment; the injuries were not accidental; and defendant had exclusive custody of the child at the time the injuries were sustained.

## 2. Sentencing— aggravating factors submitted to jury prior to *Blakely* Act—no error

The trial court did not err by submitting aggravating factors to the jury between the United States Supreme Court ruling in *Blakely v. Washington*, 542 U.S. 296 (which held that any fact that increases the penalty for a crime must be found by a jury) and the passage of North Carolina's *Blakely* Act. N.C.G.S. § 15A-1340.16(a1).

Appeal by defendant from judgment entered 5 December 2005 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 12 December 2006.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Sonya M. Calloway-Durham, for the State.*

*Terry W. Alford for defendant-appellant.*

HUNTER, Judge.

Belinda Lorraine Wilson ("defendant") appeals from her conviction entered upon a jury verdict finding her guilty of felonious child abuse inflicting serious bodily injury. Defendant argues there was insufficient evidence to support her conviction, and that the trial court erred in submitting aggravating factors to the jury. For the reasons stated herein, we find no error by the trial court.

**STATE v. WILSON**

[181 N.C. App. 540 (2007)]

The State presented evidence tending to show that in the early morning hours of 15 May 2004, defendant brought her twenty-three month-old child ("the child") to the emergency room of Cape Fear Medical Center in New Hanover County. The child had sustained extensive burns to her back and buttocks. After stabilization, the child was transported by helicopter to the North Carolina Jaycee Burn Center ("Burn Center") at UNC Hospital in Chapel Hill for further treatment. Defendant gave numerous and differing accounts for the burns to the attending physicians and nurses, who did not believe defendant's explanations were consistent with the child's injuries. Dr. Desmond Runyon ("Dr. Runyon"), an expert in child abuse, opined at trial that the burns were the result of someone deliberately placing the child in scalding water twice.

While administering treatment for the child's burns, physicians also discovered cigarette burn marks on the child's chin and symmetrical burn marks on both of the child's nipples. The treating physicians and medical experts found defendant's explanations for these marks unpersuasive and stated the burn marks were the result of intentional action.

In addition to the burn marks, the child also exhibited chronic signs of neglect. The child's appearance was "puny," with gray skin and dull, broken hair. Physicians determined the child was developmentally delayed and undernourished. Blood tests indicated poor nutrition. The child weighed less when first admitted to the Burn Center than when the child left foster care approximately nine months earlier. The child was under defendant's care during these nine months. During the near one-month stay at the Burn Center, the child gained 4.6 pounds and began to exhibit signs of a healthy baby.

Further tests revealed a blood clot, or subdural hemotoma, on the right side of the child's brain that was ten to fourteen days old. Dr. Runyon testified that a blood clot is life-threatening in small children, although the child's blood clot was likely non-deadly. However, he stated that the blood clot could cause life-long medical complications. Dr. Runyon believed shaking to be the most probable explanation for the blood clot. Defendant posited no alternative explanation. Ultimately, Dr. Runyon diagnosed the child with a subdural hematoma, first and second degree burns, battered child syndrome, and failure to thrive.

Defendant testified on her own behalf at trial. Defendant admitted she lied to various physicians, nurses, social workers, friends, and

family as to the cause of her child's injuries. Defendant testified she was giving the child a bath in the sink, but left the child unattended in order to meet her cocaine dealer outside. Defendant stated she accidentally left the hot water running, resulting in the child's burns. Defendant admitted she was using cocaine at the time of the incident. Defendant initially testified that the nipple burns were caused by hot buttons and zippers on a shirt taken out of a clothes dryer and put on the child. However, defendant later testified on cross-examination that she assumed the burns came from a curling iron. She stated the child sustained the cigarette burn to the chin when the child accidently fell upon a lit cigarette.

Upon presentation of the evidence, the jury found defendant guilty of felonious child abuse inflicting serious bodily injury. Following the verdict, the trial court instructed the jury regarding two aggravating factors the State contended existed in the case, and both sides were given the opportunity to argue regarding the aggravating factors. Specifically, the State argued the offense was especially heinous, atrocious, or cruel, and that the victim was very young. Among its other instructions, the trial court charged the jury that it had to find the aggravating factors beyond a reasonable doubt. Following deliberations, the jury found in favor of the aggravating factors. The trial court found no mitigating factors. Finding that the factors in aggravation outweighed the factors in mitigation, and that an aggravated sentence was justified, the trial court sentenced defendant in the aggravated range to 125 to 159 months of imprisonment. Defendant appeals.

[1] Defendant first argues the State did not submit sufficient evidence for the jury to find that defendant intentionally abused her child, and that the trial court therefore erred in denying her motion to dismiss. We do not agree.

The standard of review upon a defendant's motion to dismiss is well established. "In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E.2d at 169. The evidence must be viewed in the light most favorable to the State. *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). Contradiction and discrepancies in the evidence are to be resolved by the jury. *Id.*

In order to prove felonious child abuse inflicting serious bodily injury, the State must prove the following: (1) the defendant was the parent of the child; (2) the child had not reached her sixteenth birthday; and (3) the defendant intentionally and without justification or excuse inflicted serious bodily injury. N.C. Gen. Stat. § 14-318.4(a3) (2005). In the instant case, only the third element is disputed.

"[W]hen an adult has exclusive custody of a child for a period of time during which the child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries." *State v. Liberato*, 156 N.C. App. 182, 186, 576 S.E.2d 118, 120-21 (2003). Defendant had exclusive custody of the child at the time the injuries were sustained. The treating physicians and medical experts agreed that the injuries were not accidental, but rather intentionally inflicted. Defendant presented no rebuttal experts. In fact, the only evidence to the contrary was defendant's testimony in her defense. Defendant changed her account of the cause of the injuries numerous times and even contradicted herself on the witness stand. Thus, there was substantial evidence from which a reasonable jury could believe the physicians' and medical experts' testimony over defendant's explanation. As substantial evidence was introduced to support the jury's verdict of guilt, the trial court did not err in denying defendant's motion to dismiss.

**[2]** Defendant next argues the trial court erred in submitting the issue of aggravating factors to the jury. On 24 June 2004, prior to defendant's conviction and sentencing, the United States Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Blakely v. Washington*, 542 U.S. 296, 303, 159 L. Ed. 2d 403, 413 (2004). "Thus, after *Blakely*, trial judges may not enhance criminal sentences beyond the statutory maximum absent a jury finding of the alleged aggravating factors beyond a reasonable doubt." *State v. Blackwell*, 361 N.C. 41, 45, 638 S.E.2d 452, 455 (2006). Responding to *Blakely*, the North Carolina General Assembly on 30 June 2005 passed the *Blakely* Act, which amended North Carolina structured sentencing law to provide that "only a jury may determine if an aggravating factor is present in an offense." N.C. Gen. Stat. § 15A-1340.16(a1) (2005). Defendant acknowledges that the trial court complied with the mandates of *Blakely*, but argues that since the offense occurred before the *Blakely* Act was passed, the trial

judge had no authority to submit the issue of aggravating factors to the jury. We find no merit to this argument.

Our Supreme Court recently rejected a similar argument in *Blackwell*. There, the defendant argued that the trial court's error in finding a factor in aggravation was not harmless beyond a reasonable doubt "because the trial court allegedly lacked a procedural mechanism by which to submit the challenged aggravating factor to the jury." *Blackwell*, 361 N.C. at 45, 638 S.E.2d at 456. The *Blackwell* Court noted initially that the defendant failed to "demonstrate why the absence of a statutory mechanism to submit aggravating factors to the jury complicates our task in applying federal harmless error analysis[.]" *Id.* "In other words, as a practical matter, it is the same *Blakely* error to which a defendant is subjected, regardless of whether a statutory procedure exists. There is no meaningful difference between having a procedural mechanism and not using it, and not having a procedural mechanism at all." *Id.* at 46, 638 S.E.2d at 456.

The Court moreover rejected the defendant's assertion that no procedural mechanism existed in North Carolina prior to the *Blakely* Act to submit aggravating factors to the jury, stating that "North Carolina law independently permits the submission of aggravating factors to a jury using a special verdict." *Id.* The Court defined a special verdict as "a common law procedural device by which the jury may answer specific questions posed by the trial judge that are separate and distinct from the general verdict." *Id.* at 47, 638 S.E.2d at 456. Special verdicts are subject to but two limitations: (1) they must employ a " 'beyond a reasonable doubt' " standard, and (2) they must require the jury to apply law to the facts; that is, the jury must do more than "only make[] findings on the factual components of the essential elements alone[.]" *Id.* at 47, 638 S.E.2d at 457. The Court reflected that "[i]t is difficult to imagine a more appropriate set of circumstances for the use of a special verdict than those existing in the instant case, in which a special verdict in compliance with the above limitations would have safeguarded [the] defendant's right to a jury trial under *Blakely*[,]" *id.* at 48, 638 S.E.2d at 457, and concluded that "[a]ccordingly, prior to the *Blakely* Act, special verdicts were the appropriate procedural mechanism under state law to submit aggravating factors to a jury." *Id.* at 49, 638 S.E.2d at 458.

In the instant case, the trial court followed the clear edict from the United States Supreme Court in *Blakely* and properly submitted the alleged aggravating factors to the jury through the use of a special

verdict. The trial court clearly instructed the jury that it must find the aggravating factors beyond a reasonable doubt, and further required the jury to apply the applicable law to the facts it found. The trial court's action also complied with the *Blakely* Act, even if the law was technically inapplicable at the time, and thus the trial court complied with the public policy of the State. "Significantly, defendant fails to submit any compelling reason why the use of a special verdict to submit aggravating factors to the jury at [her] trial would have resulted in prejudice, and our research reveals none." *Id.* at 49, 638 S.E.2d at 458. We overrule this assignment of error.

As substantial evidence supported the jury's finding of guilt and the trial court did not err by submitting the decision of aggravating factors to the jury, no error occurred in the rendering of the guilty verdict and the sentencing of defendant.

No error.

Judges WYNN and STEELMAN concur.