STATE OF NORTH CAROLINA
v.
PAUL EMMANUEL PELHAM, Defendant.
No. COA07-1024
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Thomas H. Moore, for the State.
Geoffrey W. Hosford for defendant-appellant.
GEER, Judge.
Defendant Paul Emmanuel Pelham appeals from sentences in the aggravated range imposed following a resentencing hearing before a jury. Defendant argues that because his convictions predate legislation enacted to comply with Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), the trial court lacked authority to submit aggravating factors to a jury and should have sentenced defendant in the presumptive range. As defendant's contention has already been considered and rejected by State v. Blackwell, 361 N.C. 41, 638 S.E.2d 452 (2006), cert. denied, ___ U.S. ___, 167 L. Ed. 2d 1114, 127 S. Ct. 2281 (2007), and State v. Wilson, 181 N.C. App. 540, 640 S.E.2d 403 (2007), defendant has failed to demonstrate that error occurred at his resentencing hearing.

Facts
The facts underlying defendant's convictions are set out fully in this Court's prior opinion in this case. See State v. Pelham, 164 N.C. App. 70, 72-74, 595 S.E.2d 197, 199-201, appeal dismissed and disc. review denied, 359 N.C. 195, 608 S.E.2d 63 (2004). In October 2002, defendant was convicted of three counts of assault with a firearm on a law enforcement officer and one count each of (1) assault with a deadly weapon with intent to kill inflicting serious injury, (2) possession with intent to sell or deliver marijuana, (3) possession of cocaine, (4) maintaining a dwelling for controlled substances, and (5) possession of drug paraphernalia. As to each of the assault charges, the trial court, in the sentencing hearing following the jury verdict, made a judicial finding of the aggravating factor that the offense was committed for the purpose of avoiding or preventing a lawful arrest. The trial court sentenced defendant to an aggravated-range term of 125 to 159 months imprisonment for the conviction of assault with a deadly weapon with intent to kill inflicting serious injury, followed by three consecutive aggravated-range terms of 36 to 53 months for the convictions for assault with a firearm on a law enforcement officer. The trial court also consolidated the drug-related offenses and imposed one concurrent presumptive-range sentence of six to eight months. On direct appeal, this Court found no prejudicial error and upheld defendant's convictions and sentences. See id. at 83, 595 S.E.2d at 206. The Supreme Court denied review. On 26 June 2006, defendant filed a motion for appropriate relief in Brunswick County Superior Court, arguing that the aggravated sentences for his four assault convictions violated the United States Supreme Court's holding in Blakely. The superior court granted defendant's motion for appropriate relief and ordered that defendant be resentenced with respect to the four assault convictions.
The State gave notice that it intended to present evidence at the resentencing hearing of two aggravating factors: (1) that defendant committed each of the four assaults for the purpose of avoiding or preventing a lawful arrest and (2) that the victim's serious injuries were permanent and debilitating. At defendant's 20 February 2006 resentencing hearing, the State's evidence tended to establish the following facts.
Based on a controlled purchase of illegal drugs, the Brunswick County Sheriff's Department obtained and executed at night a search warrant of defendant's trailer. Two SWAT teams were deployed dressed in black or camouflage clothing, but with "SHERIFF" printed on the clothing and with badges displayed. As the two teams simultaneously approached the trailer, they used "flash-bang" grenades, and shouted "Sheriff's Department, search warrant." Finding the front door locked, officers used a battering ram to enter the trailer. Once inside, Deputies Stephen Lanier and Michael Smith went to the back of the trailer to secure the rear bedroom. When Lanier reached the bedroom, he moved the sheet covering the doorway, stepped into the room, and began to sweep the room with his gun. Moving across the room, Lanier saw defendant emerge from the bathroom doorway, aiming a revolver at him. Defendant shot Lanier in the neck and right hand from about three to five feet away. As Lanier fell backward, he returned fire in defendant's direction. When Smith heard the gunshots, he ran to where Lanier was lying near the doorway. As Smith provided cover fire for Lanier to crawl out of the room, Smith saw defendant peek out from the bathroom and shoot twice at Lanier.
Deputies Keith Cain and Marshall Evans also heard the gunfire and converged on Lanier and Smith. Both Cain and Evans saw defendant aim his gun at them as they exchanged fire. Defendant refused to obey orders from the officers to surrender, continuing to barricade himself in the bathroom and occasionally peeking out at the officers with his gun. After the officers shot and severely wounded defendant, he surrendered.
Lanier was taken to the hospital where he was treated for his gunshot wounds. The first shot entered Lanier's neck, went through his right lung, hit his spine, and lodged in the back of his bulletproof vest. Another bullet struck his "right long finger," fracturing his finger and causing nerve damage.
In a medical report to which defendant stipulated, Dr. Richard S. Moore indicated that he had examined Lanier on 11 November 2003. Dr. Moore determined that Lanier had reached maximum medical improvement and concluded, based on guidelines published by the American Medical Association and the North Carolina Industrial Commission, that the gunshot wound to Lanier's right hand "result[ed] in a total right upper extremity permanent partial [impairment] rating of 55%" and "a total permanent partial impairment rating of [the] whole person of [] 33%." With respect to the neck and chest wound, Dr. Moore concluded that Lanier suffered a "5% permanent partial impairment of the whole person," resulting, when all of the injuries were considered together, in a "final [partial] impairment of the whole person of 36%."
Lanier testified about how his injuries have limited his ability to perform his duties as a law enforcement officer, explaining that he has difficulty gripping a gun with his right hand due to the lack of sensation and muscle loss. In addition, due to weakness in his right index finger, Lanier has to fire his weapon by pulling the trigger with his middle finger, which greatly affects his accuracy. Because of these limitations, Lanier is unable to perform the duties necessary to remain on the SWAT team, although he is able to continue to work as a deputy sheriff.
At the resentencing hearing, defendant testified that he was asleep when the officers entered his trailer and that he shot at them believing he was defending himself from a burglar. His mother and stepfather, who lived next door to defendant at the time, testified that they did not hear the officers announce their presence as they entered defendant's trailer. The jury found the aggravating factor that defendant committed the assaults on Deputies Cain, Evans, and Smith for the purpose of avoiding or preventing a lawful arrest. As to Deputy Lanier, the jury declined to find that aggravating factor, but found the second aggravating factor: that the serious injury inflicted upon the victim was permanent and debilitating. Based on these findings, the trial court sentenced defendant to an aggravated-range term of 125 to 159 months imprisonment for the assault with a deadly weapon with intent to kill inflicting serious injury conviction, followed by three consecutive aggravated-range terms of 31 to 47 months for the three charges of assault with a firearm on a law enforcement officer. Defendant timely appealed his sentences.

Discussion
Defendant first challenges the trial court's authority to impose aggravated-range sentences at the time of his resentencing. On 24 June 2004, the United States Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and found beyond a reasonable doubt. Blakely, 542 U.S. at 303, 159 L. Ed. 2d at 413, 124 S. Ct. at 2536. Following Blakely, there was a gap in time before the General Assembly amended the State's sentencing procedure to comply with Blakely and provide that "only a jury may determine if an aggravating factor is present in an offense." N.C. Gen. Stat. § 15A-1340.16(a1) (2007). Defendant argues that until the enactment of this legislation, trial courts had no authority to submit aggravating factors to juries and were required to impose presumptive-range sentences.
The North Carolina Supreme Court rejected this argument in Blackwell, holding that during this period, trial courts were permitted to submit an aggravating factor to the jury using the common law procedural device of special verdicts so long as the special verdicts used met certain constitutional requirements: that the special verdict (1) employed a "reasonable doubt" standard of proof and (2) required the jury to apply the law to the facts as they find them. 361 N.C. at 47, 638 S.E.2d at 457. See also Wilson, 181 N.C. App. at 545, 640 S.E.2d at 407 (holding trial court complied with Blakely and "public policy of the State" by submitting aggravating factor via special verdict that used "beyond a reasonable doubt" standard and required jury to apply law to facts).
Defendant does not contend that the special verdicts used in his resentencing hearing failed to comply with the constitutional limitations set out in Blackwell, but rather argues only that the trial court lacked a legislatively authorized mechanism to impose aggravated sentences. Since Blackwell forecloses defendant's argument, we overrule this assignment of error.
Defendant next argues that the trial judge, in instructing the jury, erred in denying his request to include the word "enfeebled" when defining a "permanent and debilitating injury" for purposes of the aggravating factor that "[t]he serious injury inflicted upon the victim is permanent and debilitating." The trial judge gave the following instruction:
The State contends and the defendant denies that a second aggravating factor exists. The serious injury inflicted upon the victim, Stephen Lanier, is permanent and debilitating. . . . I instruct you that serious injury is permanent, when that injury has long term or extended effects. I further instruct you that a serious injury is debilitating, where as a result of the injury, the victim's energy or strength is impaired or weakened, or the injury has resulted in diminished use of a body part, such as a hand.
Defendant contends that the exclusion of the word "enfeebling" misled the jury as to what constitutes a "debilitating injury."
At the charge conference, the trial judge explained that in drafting the instruction, he used a dictionary to define the terms "debilitate" and "debilitated":
THE COURT:. . . . Debilitate is defined as to sap the strength or energy of. To [e]nervate. Debilitated is defined as, showing impairment of energy or strength in people. The commonality there is that both make reference to some diminishment of energy or strength, in defining the word debility.
In response, defense counsel conceded that "the word `enfeebled' is a synonym of what we're looking for, the debilitation," but argued that it should be included because "it better describes the total condition of debilitation." Defense counsel, however, agreed that the trial judge's definition of "debilitating" applied to the facts in the case. Ultimately, the trial judge excluded "enfeebled" from the instruction "[t]o avoid confusion, because the evidence in this case does not show necessarily that the injury resulted in Mr. Lanier being enfeebled, whatever that term means. What it does show is that there has been some diminution of energy and/or strength; and that there's been some diminished use of a body part. Specifically, his hand."
On appeal, this Court considers a jury charge contextually and in its entirety. State v. Blizzard, 169 N.C. App. 285, 296, 610 S.E.2d 245, 253 (2005). The charge will be held to be sufficient if it presents the law of the case in such a manner as to leave no reasonable cause to believe that the jury was misled or misinformed. Id. at 296-97, 610 S.E.2d at 253. "'[I]t is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.'" Id. at 297, 610 S.E.2d at 253 (quoting Bass v. Johnson, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002)).
"Enfeeble" means "to make feeble"; "deprive of strength"; or "to reduce the strength of." Webster's Third New International Dictionary 751 (1968). As defense counsel conceded in the charge conference, "enfeebling" is synonymous with "debilitating," and "debilitating" accurately describes Officer Lanier's injuries. Because these terms are synonymous and similarly apply to the victim's injuries, the trial judge reasonably excluded "enfeebled" to avoid confusion. The instructions were sufficient to present the law of the case regarding "serious injuries" of a "permanent and debilitating" nature in a manner that neither misled nor misinformed the jury. The trial judge, therefore, did not err in denying defendant's request regarding the jury instructions.
No Error.
Judges TYSON and STROUD concur.
Report per Rule 30(e).