MARTIN, Justice.
In Washington v. Recuenco, 548 U.S. ___, 165 L. Ed. 2d 466 (2006), the United States Supreme Court concluded that error under Blakely v. Washington, 542 U.S. 296 (2004), was subject to federal harmless error analysis. We therefore review the Blakely violation which occurred at defendant's second trial for harmlessness. We also address defendant's argument that federal Blakely error violates the Constitution of North Carolina (the State Constitution). We conclude that the trial court's finding of an aggravating factor at defendant's second trial was harmless beyond a reasonable doubt, and did not violate Article I, Section 24 of the State Constitution.
The facts giving rise to the instant criminal prosecution arose over nine years ago. On 27 February 1997, Sherry and Greg Dail made plans to run errands together in Durham with their three young children: Megan, age four; Austin, age two; and Joshua, age one. Because Sherry had to drive to work later that afternoon, they drove separate vehicles but followed one another traveling south on Guess Road. Defendant, Timothy Earl Blackwell, was traveling in his truck in the opposite direction. Defendant had used cocaine and heroin the night before and was intoxicated from drinking beer that morning. Defendant's blood alcohol content was 0.13 grams of alcohol per one hundred milliliters of whole blood, and his blood tested positive for cocaine metabolites and opiates. Police officers later found hypodermic needles and beer cans in defendant's truck.
Several witnesses observed defendant's erratic and dangerous driving, which included driving at speeds estimated to be as high as seventy-five miles per hour. After running a red light and swerving back and forth across the road, defendant's truck jumped a curb, knocked over several trash cans and a mailbox, then crossed several lanes and headed directly into oncoming traffic. After managing to get back into the northbound lane, defendant repeatedly crossed the center line again, forcing several cars off the road. Shortly thereafter, defendant hit the Dails head-on as they approached the intersection of Guess Road and Rose of Sharon Road. Defendant crossed the center line, sideswiped Sherry's car, and collided with Greg's van. As a result of the crash, Sherry, Greg, Austin, and Joshua all suffered severe injuries. Megan was killed.
Based on these events, defendant was indicted for the felonies of murder and habitual impaired driving, as well as four counts of felonious assault with a deadly weapon inflicting serious injury. He was also indicted for the following misdemeanors: driving while license revoked, driving left of center, possession of drug paraphernalia, and possession of an open container. Pursuant to a plea agreement, defendant pled guilty to all charges except the murder charge and the four assault charges. At trial, the jury convicted defendant of first-degree murder and all four felony assault charges. Defendant appealed, and the Court of Appeals ordered a new trial. State v. Blackwell, 135 N.C. App. 729, 522 S.E.2d 313 (1999). The state appealed to this Court, and we remanded to the Court of Appeals for reconsideration in light of our decision in State v. Jones, 353 N.C. 159, 538 S.E.2d 917 (2000), which held that culpable negligence could not be used to satisfy the intent requirements for first-degree murder. State v. Blackwell, 353 N.C. 259, 538 S.E.2d 929 (2000) (per curiam) (Blackwell I). The Court of Appeals further remanded the case for a new trial. State v. Blackwell, 142 N.C. App. 388, 542 S.E.2d 675 (2001).
During his second trial, the jury convicted defendant of one count of second-degree murder, one count of felonious habitual impaired driving, one count of felonious assault with a deadly weapon inflicting serious injury, three counts of misdemeanor assault with a deadly weapon, and assorted other misdemeanors not pertinent to this appeal. The trial court found as an aggravating factor that defendant committed each felony while he was on pretrial release for another charge. The trial court also found the following factors in mitigation with respect to the felonies: (1) defendant participated in a drug or alcohol treatment program; (2) he supported his family; (3) he had a support system in the community; (4) he was a model prisoner while in custody; (5) he completed his GED while in custody; and (6) he was remorseful. After finding that the aggravating factor outweighed the mitigating factors, the trial court sentenced defendant on 13 November 2002 to consecutive sentences in the aggravated range as follows: for second-degree murder, 353 to 461 months; for felony assault, 66 to 89 months; and for habitual impaired driving, 26 to 32 months. Defendant also received sentences for various misdemeanor convictions.
Defendant again appealed to the Court of Appeals, and his case was heard on 30 March 2004, seven days after the United States Supreme Court heard oral arguments in Blakely v. Washington, 542 U.S. 296 (2004). The Supreme Court issued its decision in Blakely on 24 June 2004, while the Court of Appeals was still considering defendant's case. Blakely held that a trial judge's sentencing of a defendant beyond the statutory maximum, based on the trial judge's finding that defendant had acted with deliberate cruelty, violated the defendant's right to trial by jury under the Sixth Amendment to the United States Constitution. In response to Blakely, defendant filed a motion for appropriate relief (MAR) in the Court of Appeals. In September 2004, the Court of Appeals granted defendant's MAR and held that defendant had otherwise received a trial free of prejudicial error. The Court of Appeals remanded defendant's case to the trial court for resentencing under Blakely. See State v. Blackwell, 166 N.C. App. 280, 603 S.E.2d 168 (2004) (unpublished).
In December 2004, this Court allowed the state's petition for discretionary review. While Blackwell was pending in this Court, we decided the case of State v. Allen, 359 N.C. 425, 615 S.E.2d 256 (2005), withdrawn, 360 N.C. 569, 635 S.E.2d 899 (2006). Allen held that Blakely error was structural error under the United States Constitution. Id. at 444, 615 S.E.2d at 269. In August 2005, this Court modified and affirmed the Court of Appeals decision in Blackwell, based on the Allen decision. 359 N.C. 814, 618 S.E.2d 213 (2005) (Blackwell II). In Blackwell II, we ordered remand of defendant's case for resentencing.
In September 2005, this Court allowed the state's motion to stay the issuance of our mandate in Blackwell II, 359 N.C. 823, 620 S.E.2d 528 (2005), based on the state's petition for writ of certiorari to the United States Supreme Court in State v. Speight, 359 N.C. 602, 614 S.E.2d 262 (2005), vacated and remanded, 548 U.S. ___, 165 L. Ed. 2d 983 (2006). Both Blackwell II and Speight raised the common legal issue of whether Blakely error was subject to federal harmless error review. In Washington v. Recuenco, 548 U.S. ___, 165 L. Ed. 2d 466, the United States Supreme Court answered this question in the affirmative. Four days after issuing its decision in Recuenco, the United States Supreme Court vacated this Court's decision in Speight and remanded the case to this Court for further consideration in light of Recuenco. Speight, 548 U.S. ___, 165 L. Ed. 2d 983.
After the United States Supreme Court issued Recuenco and Speight, this Court ordered supplemental briefing from the parties "limited to the questions of whether there was error in this case pursuant to Washington v. Recuenco and, if so, whether any error can be found to be harmless beyond a reasonable doubt." 360 N.C. 570, 570, 635 S.E.2d 900, 901 (2006).
Before considering the merits, we pause to consider recent jurisprudential and legislative developments affecting this state's sentencing procedures. In Apprendi v. New Jersey, the United States Supreme Court held that a twelve-year sentence based on a judicial finding that the defendant committed a hate crime was unconstitutional when the statutory range for the offense was five to ten years. 530 U.S. 466 (2000). The Court explained that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In 2004, Blakely clarified this rule by holding that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted). Thus, after Blakely, trial judges may not enhance criminal sentences beyond the statutory maximum absent a jury finding of the alleged aggravating factors beyond a reasonable doubt.
In June 2005, the General Assembly amended Chapter 15A of the General Statutes to require the submission of aggravating factors to a jury, which must make its findings using a reasonable doubt standard. See Act to Amend State Law Regarding the Determination of Aggravating Factors in a Criminal Case to Conform with the United States Supreme Court Decision in Blakely v. Washington, ch. 145, 2005 N.C. Sess. Laws 253 (codified at N.C.G.S. §§ 15A-924(a), -1022.1, -1340.14, -1340.16 (2005)) (the Blakely Act).
Mindful of this historical context, we now consider whether the state has carried its burden of proving that the Blakely error which occurred at defendant's second trial was harmless beyond a reasonable doubt. In support of his contention that the trial court's failure to submit the aggravating factor in N.C.G.S. § 15A-1340.16(d)(12) to the jury was not harmless, defendant makes two arguments. Defendant first argues that the Blakely error which occurred at his second trial was not harmless beyond a reasonable doubt because the trial court allegedly lacked a procedural mechanism by which to submit the challenged aggravating factor to the jury. In support of his contention, defendant cites the following sentence from Recuenco:
If respondent is correct that [state] law does not provide for a procedure by which his jury could have made a finding pertaining to [the aggravating factor at issue], that merely suggests that respondent will be able to demonstrate that the Blakely violation in this particular case was not harmless.
Recuenco, 548 U.S. at ___, 165 L. Ed. 2d at 474 (emphasis omitted).
As an initial matter, defendant does not demonstrate why the absence of a statutory mechanism to submit aggravating factors to the jury complicates our task in applying federal harmless error analysis under Neder v. United States, 527 U.S. 1, 9 (1999) (holding that the prosecution's failure to submit an element of offense to the jury was harmless error when evidence establishing the element was "overwhelming" and "uncontroverted" (internal quotation marks omitted)). Perhaps defendant's omission stems from the fact that it logically makes no difference whether the trial judge could submit the issue to the jury, because in every instance of Blakely error, the judge did not properly do so. Recuenco itself emphasizes this point in the sentence immediately following the language on which defendant so heavily relies: "Blakely error . . . is of the same nature, whether it involves a fact that state law permits to be submitted to the jury or not . . . ." Recuenco, 548 U.S. at ___, 165 L. Ed. 2d at 474. In other words, as a practical matter, it is the same Blakely error to which a defendant is subjected, regardless of whether a statutory procedure exists. There is no meaningful difference between having a procedural mechanism and not using it, and not having a procedural mechanism at all. In either event, whether the absence of a procedural mechanism is Blakely error in the first place is wholly separate from our duty to weigh the evidence supporting the aggravating factor and determine whether the evidence was so "overwhelming" and "uncontroverted" as to render any error harmless, see Neder, 527 U.S. at 9 (internal quotation marks omitted). Defendant offers no compelling argument to connect the two, and we do not believe that the Court in Recuenco intended - through a single sentence of dicta - to fundamentally transform otherwise harmless error into reversible error.
Moreover, even assuming this language in Recuenco was intended to limit the scope of federal harmless error analysis, it is of no practical consequence, as North Carolina law independently permits the submission of aggravating factors to a jury using a special verdict. A special verdict is a common law procedural device by which the jury may answer specific questions posed by the trial judge that are separate and distinct from the general verdict. See Walker v. N.M. & S. Pac. R.R. Co., 165 U.S. 593, 594-95 (1897) (recognizing the use of special verdicts at common law); see also Suja A. Thomas, The Seventh Amendment, Modern Procedure, and the English Common Law, 82 Wash. U. L.Q. 687, 732-35 (2004) (describing various permutations of special verdicts). Despite the fact that the General Statutes do not specifically authorize the use of special verdicts in criminal trials, it is well-settled under our common law that "`special verdicts are permissible in criminal cases.'" State v. Underwood, 283 N.C. 154, 163, 195 S.E.2d 489, 494 (1973) (quoting State v. Straughn, 197 N.C. 691, 692, 150 S.E. 330, 330 (1929)); see also, e.g., State v. Rick, 342 N.C. 91, 101, 463 S.E.2d 182, 187 (1995); State v. Batdorf, 293 N.C. 486, 494, 238 S.E.2d 497, 503 (1977); State v. Allen, 166 N.C. 242, 243, 166 N.C. 265, 266-67, 80 S.E. 1075, 1075-76 (1914); State v. Holt, 90 N.C. 749 passim (1884); State v. Watts, 32 N.C. 266, 268, 10 Ired. 369, 372 (1849).
Special verdicts, however, are subject to certain limitations. After the United States Supreme Court decision in United States v. Gaudin, a special verdict in a criminal case must not be a "true" special verdict - one by which the jury only makes findings on the factual components of the essential elements alone - as this practice violates a criminal defendant's Sixth Amendment right to a jury trial. 515 U.S. 506, 511-15 (1995); Kate H. Nepveu, Beyond "Guilty" or "Not Guilty": Giving Special Verdicts in Criminal Jury Trials, 21 Yale L. & Pol'y Rev. 263, 263 (2003) [hereinafter Nepveu]; cf. N.C. R. Civ. P. 49(a) (allowing a "true" special verdict in civil cases, defining it as "that by which the jury finds the facts only."). Thus, trial courts using special verdicts in criminal cases must require juries to apply law to the facts they find, in some cases "straddl[ing] the line between facts and law" as a "mini-verdict" of sorts. See Nepveu at 276 (noting the "most common and widely recognized" use of "special verdicts that combine facts and law" is in RICO and continuing criminal enterprise prosecutions).
Furthermore, requests for criminal special verdicts must require the jury to arrive at its decision using a "beyond a reasonable doubt" standard, since a lesser standard such as "preponderance of the evidence" would violate a defendant's right to a jury trial. See Blakely, 542 U.S. at 301. Aside from these limitations, however, we are aware of no limits on our trial courts' broad discretion to utilize special verdicts in criminal cases when appropriate. See generally 75B Am. Jur. 2d Trial § 1842 (1992 & Supp. 2006) ("A trial court has discretion in framing a special verdict, which will not be disturbed if the material issues of fact in the case are addressed.").
It is difficult to imagine a more appropriate set of circumstances for the use of a special verdict than those existing in the instant case, in which a special verdict in compliance with the above limitations would have safeguarded defendant's right to a jury trial under Blakely. Indeed, our precedent reflects this sentiment, as do decisions from other jurisdictions. Following Apprendi's holding that any fact increasing the statutory maximum sentence must be submitted to the jury and found beyond a reasonable doubt, 530 U.S. at 490, we held in State v. Lucas that N.C.G.S. § 15A-1340.16A needed reinterpretation because it permitted trial judges to unilaterally enhance a defendant's sentence for firearm use. 353 N.C. 568, 597-98, 548 S.E.2d 712, 731-32 (2001). Notwithstanding the lack of express statutory authority for a jury to find facts supporting the firearm enhancement, this Court held that trial courts had the authority to submit the issue to the jury so that it could deliver a verdict beyond a reasonable doubt as to the firearm enhancement. Id. Though we did not specifically refer to such a procedural mechanism as a "special verdict," we described the procedure as follows: "If the jury returns a guilty verdict that includes these factors, the trial judge shall make the finding set out in the statute and impose an enhanced sentence." Id. at 598, 548 S.E.2d at 731.
Lucas illustrates the propriety of the special verdict as a procedural mechanism by which a criminal defendant's right to trial by jury may be scrupulously protected. Not surprisingly, other courts have reached similar conclusions. See, e.g., United States v. Flaharty, 295 F.3d 182, 196 (2d Cir.) (holding that a special verdict and proper jury instructions made any Apprendi error in the indictment harmless), cert. denied, 537 U.S. 936 (2002); United States v. Trennell, 290 F.3d 881, 890 (7th Cir.) (same), cert. denied, 537 U.S. 1014 (2002); United States v. Borders, 270 F.3d 1180, 1184-85 (8th Cir. 2001) (observing that use of a special verdict contributed to Apprendi requirements being satisfied); State v. Watson, 346 N.J. Super. 521, 534, 788 A.2d 812, 820 (N.J. Super. Ct. App. Div. 2002) ("However, until [Apprendi's application to the Graves Act, which provides for mandatory parole ineligibility for firearms use, is determined], we urge trial judges to try Graves Act cases as if [the jury was required to find the factors relating to the parole disqualifier]. In other words, if use or possession of a firearm is not an element of the offense, a special verdict should be presented to the jury on that issue . . . ."), cert. denied, 176 N.J. 278, 822 A.2d 608 (2003); cf. United States v. Strickland, 245 F.3d 368, 376 (4th Cir.) (holding that failure to request special interrogatories on drug quantity limits review to plain error), cert. denied, 534 U.S. 894, 930 (2001); United States v. Swatzie, 228 F.3d 1278, 1281 (11th Cir. 2000) (same), cert. denied, 533 U.S. 953 (2001); Keels v. United States, 785 A.2d 672, 686 n.10 (D.C. 2001) (noting that "[i]n some instances, [Apprendi] may cause the trial judge to utilize special interrogatories or a special verdict form"); Poole v. State, 846 So. 2d 370, 388 (Ala. Crim. App. 2001) (per curiam) ("To comply with . . . Apprendi, the trial court should submit [a special verdict] . . . that addresses whether the sale [of drugs] occurred within a three-mile radius of a school and/or a housing project."). See generally Nepveu at 264 (noting that special verdicts are frequently used to find aggravating factors). Given that Apprendi and Blakely both implicate the right of a defendant to a trial by jury, these decisions from other courts reinforce that special verdicts are a widely accepted method of preventing Blakely error.
Accordingly, prior to the Blakely Act, special verdicts were the appropriate procedural mechanism under state law to submit aggravating factors to a jury. Significantly, defendant fails to submit any compelling reason why the use of a special verdict to submit aggravating factors to the jury at his trial would have resulted in prejudice, and our research reveals none. See generally David A. Lombardero, Do Special Verdicts Improve the Structure of Jury Decision-Making?, 36 Jurimetrics J. 275, 277 (1996) ("The predominant view seems to be that special verdicts benefit the defendant . . . ."). The trial court possessed the authority to submit the aggravating factor in N.C.G.S. § 15A-1340.16(d)(12) to the jury using a special verdict in compliance with the aforementioned constitutional limitations. Defendant's argument is therefore without merit.
Next, we undertake our duty under Recuenco to determine whether the trial court's failure to submit the challenged aggravating factor to the jury in the present case was harmless beyond a reasonable doubt. In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so "overwhelming" and "uncontroverted" that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt. Neder, 527 U.S. at 9 (internal quotation marks omitted); see N.C.G.S. § 15A-1443(b) (2005); State v. Heard, 285 N.C. 167, 172, 203 S.E.2d 826, 829 (1974) ("[B]efore a court can find a Constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt."). For evidence of an aggravating factor to be deemed "uncontroverted," it is not enough that defendant merely raised an objection at trial. See, e.g., Neder, 527 U.S. at 19. Instead, the defendant must "bring forth facts contesting the omitted element," and must have "raised evidence sufficient to support a contrary finding." Id.
In the instant case, the aggravating factor at issue was the statutory (d)(12) aggravator: "defendant committed the offense while on pretrial release on another charge." N.C.G.S. § 15A-1340.16(d)(12) (2005). Defendant has never disputed, at trial or on appeal, that he was on pretrial release when he committed the present crimes. The evidence presented at defendant's second trial, showing that he committed the underlying crime while on pretrial release, was both uncontroverted and overwhelming. Former State Trooper S.D. Davis testified that he arrested defendant on 4 May 1996 in Pender County and charged him with driving while impaired (DWI) and driving while license revoked. On direct examination, the District Attorney elicited the following testimony from Trooper Davis:
Q Looking on the front of the citation. Do you see a judgment in the area designated for judgment?
A No, I do not.
Q And that's with respect to the driving while impaired charge, isn't it?
A Yes.
Q With respect to the driving while license revoked charge, do you see a judgment?
A No, I do not.
Q If there is no judgment would it then have been pending at the time of February 27 of 1997?
A Yes, sir.
The citation completed by Trooper Davis was admitted into evidence. It is readily apparent from Trooper Davis's testimony and the physical evidence of the citation itself that defendant's charges for DWI and driving while license revoked were pending at the time of the fatal collision that gave rise to the instant charges. Defendant failed to object to the colloquy set out above and failed to present any evidence or argument to rebut Trooper Davis's testimony that defendant was on pretrial release at the time he committed the present offenses. In fact, defendant did not even object to the following statement by the District Attorney during sentencing:
With respect to this single aggravating factor, the defendant committed the offense while on pretrial release for another charge, that being another DWI in Pender County as described by Trooper Davis, if the Court looks at this defendant's history, that's a pretty typical pattern over the last twenty-five years that this defendant has been involved with driving offenses and other violations.
At no point during sentencing did defendant object to the District Attorney's assertion that defendant was on pretrial release at the time of the instant crimes. Nor did defendant present any contrary evidence or argue that the (d)(12) aggravator should not be found or that it lacked aggravating value. Indeed, defendant's only arguments at sentencing related to the presence of various statutory and nonstatutory mitigating factors, all of which the trial court found to exist.
Taken together, Trooper Davis's testimony, the 4 May 1996 citation, defendant's failure to object, and defendant's failure to present any arguments or evidence contesting the sole aggravating factor constitute uncontroverted and overwhelming evidence that defendant committed the present crimes while on pretrial release for another offense. There can be no serious question that if the instant case were remanded to the trial court for a jury determination of the sole aggravating factor presented, the state would offer identical evidence in support of that aggravator in the form of official state documents and the testimony of state record-keepers. Accordingly, the Blakely error which occurred at defendant's second trial was harmless beyond a reasonable doubt.
Having completed our review of the federal constitutional question arising from defendant's second trial, we now consider defendant's argument that the trial court's failure to submit an aggravated sentencing factor to the jury is reversible per se under Article I, Section 24 of the State Constitution. Defendant alleges the State Constitution provides additional protection to criminal defendants above and beyond Recuenco, and therefore, Blakely-type error is reversible per se under state law.
Defendant's argument overlooks, however, that aggravating factors are not, and have never been, elements of a "crime" for purposes of Article I, Section 24 analysis. This section of the State Constitution provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24. This Court has held that the finding of aggravating factors by a trial judge instead of a jury does not implicate, and is permissible under, Article I, Section 24 of the State Constitution. E.g., State v. Denning, 316 N.C. 523, 524, 342 S.E.2d 855, 856 (1986) ("We hold that because the factors before the trial judge in determining sentencing are not elements of the offense, their consideration for purposes of sentencing is a function of the judge and therefore not susceptible to constitutional challenge based upon . . . article I, section 24 of the North Carolina Constitution."); State v. Williams, 295 N.C. 655, 670, 249 S.E.2d 709, 719-20 (1978) ("That the judge rather than the jury makes the crucial factual determinations upon which the ultimate sentence is based does not contravene [the State Constitution]. . . ."), superseded by statute on other grounds, State v. Jerrett, 309 N.C. 239, 307 S.E.2d 339 (1983). Therefore, because a trial judge's determination of aggravating factors does not violate Article I, Section 24, we do not reach the question of whether harmless error or structural error would apply under this provision of the State Constitution.
In so holding, we acknowledge our duty to fully vindicate defendant's rights under Blakely, see De Canas v. Bica, 424 U.S. 351, 357-58 n.5 (1976) (observing that, under the Supremacy Clause, state law is preempted only to the extent necessary to effectuate federal law), and to apply the federal rule that aggravating factors are to be treated as elements of the underlying substantive offense for purposes of the Sixth Amendment. Blakely, 542 U.S. at 303-04. Having done so, we observe that defendant now seeks greater protection under the State Constitution than what is provided by the Sixth Amendment as interpreted in Blakely. In resolving defendant's argument under the State Constitution, we decline to superimpose Blakely's definition of aggravator upon the well recognized definition of "crime" under Article I, Section 24 of the State Constitution. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 293 (1982) ("[A] state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by this Court in favor of a different analysis of its corresponding constitutional guarantee." (emphasis added)); State v. McClendon, 350 N.C. 630, 635, 517 S.E.2d 128, 132 (1999) ("`Whether rights guaranteed by the Constitution of North Carolina have been provided and the proper tests to be used in resolving such issues are questions which can only be answered with finality by this Court.'" (quoting State v. Arrington, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984))). Accordingly, defendant's claim is without merit.
In summary, the Blakely error which occurred at defendant's second trial was harmless beyond a reasonable doubt. Moreover, the trial court's finding of an aggravating factor did not violate Article I, Section 24 of the State Constitution. To the extent the Court of Appeals ordered remand of defendant's case for resentencing, it is reversed. The Court of Appeals opinion, as affirmed at 359 N.C. 814, 618 S.E.2d 213, remains undisturbed in all other respects. The stay entered by this Court on 6 September 2005 is dissolved.
AFFIRMED IN PART AND REVERSED IN PART.