STATE v. ROBERSON

[182 N.C. App. 133 (2007)]

———————————

STATE OF NORTH CAROLINA v. KENNETH WILLIAM ROBERSON

No. COA04-1645-2

(Filed 6 March 2007)

**Sentencing— aggravating factor—*Blakely* error—not prejudicial**

The trial court's *Blakely* error in enhancing defendant's sentence for assault with a deadly weapon inflicting serious injury based upon the trial court's finding without submission to the jury of the aggravating factor that the offense was committed

for the benefit of a criminal street gang and defendant was not charged with a conspiracy was harmless where the evidence supporting this aggravating factor was overwhelming and uncontradicted.

On remand by order of the Supreme Court of North Carolina filed 29 December 2006 vacating in part and remanding the unanimous decision of the Court of Appeals, *State v. Roberson*, 174 N.C. App. 840, 622 S.E.2d 522 (2005), for reconsideration in light of *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006). Appeal by defendant from judgment entered 24 May 2004 by Judge Abraham P. Jones in Durham County Superior Court. Originally heard in the Court of Appeals 24 August 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Winifred H. Dillon, for defendant-appellant.*

JACKSON, Judge.

On 24 May 2004, Kenneth William Roberson ("defendant") was convicted by a jury of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was sentenced in the aggravated range, to a term of imprisonment with the North Carolina Department of Correction. Defendant appealed from his conviction and sentencing. This Court initially upheld defendant's conviction and remanded the case to the trial level for resentencing based upon defendant being sentenced in the aggravated range. *See State v. Roberson*, 174 N.C. App. 840, 622 S.E.2d 522 (2005) (unpublished) (hereinafter "*Roberson I*").

A full recitation of the facts underlying defendant's conviction is set forth in *Roberson I*. Following defendant's conviction, defendant was sentenced as a Level II offender for the offense of assault with a deadly weapon with the intent to kill and inflicting serious injury, which is a Class C felony. *See* N.C. Gen. Stat. § 14-32(a) (2003). Absent a finding of aggravating factors, defendant was subject to a term of imprisonment with a minimum range of eighty to one hundred months, and a maximum range of 105 to 129 months. *See* N.C. Gen. Stat. § 15A-1340.17 (2003). The trial court found one aggravating factor and two mitigating factors, but determined the factor in aggravation outweighed the factors in mitigation, and that an aggravated sentence was justified. Defendant then was sentenced

in the aggravated range, and received a term of imprisonment of 125 to 159 months.

In an order filed 29 December 2006, our Supreme Court upheld this Court's opinion with the exception of the portion remanding for resentencing. *State v. Roberson*, 361 N.C. 178, 641 S.E.2d 312 (2006). Our Supreme Court vacated that portion of our opinion ordering remand to the trial court for resentencing, and remanded the case to this Court for reconsideration in light of *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006).

Defendant contends his Sixth Amendment right to a jury trial was violated, when the trial court imposed a sentence in the aggravated range based upon facts which were not admitted by him or found by a jury beyond a reasonable doubt, in violation of the U.S. Supreme Court's ruling in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, *reh'g denied*, 542 U.S. 961, 159 L. Ed. 2d 851 (2004).

Pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455. In *Blakely*, the U.S. Supreme Court applied the holding of *Apprendi*, and held:

> [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id.* at 303-04, 147 L. Ed. 2d at 413-14 (internal citation and emphasis omitted).

In the instant case, the trial court found as an aggravating factor, that: "The Offense was committed for the benefit of, or at the direction of, any criminal street [gang], with the specific intent to promote, further, or assist in any criminal conduct by gang members, and the defendant was not charged with committing a conspiracy." Defendant did not stipulate to this fact, nor was the finding of the aggravating factor submitted to the jury. As such, this constitutes error under *Blakely* "because the defendant received a sentence beyond the statu-

tory maximum based upon aggravating factors that were not found by a jury based upon proof beyond a reasonable doubt." *State v. McQueen*, 181 N.C. App. 417, 422, 639 S.E.2d 131, 134 (2007).

Prior to recent holdings, our Supreme Court treated sentencing errors under *Blakely* as structural errors that were reversible *per se*. *State v. Allen*, 359 N.C. 425, 449, 615 S.E.2d 256, 272 (2005), *withdrawn*, 360 N.C. 569, 635 S.E.2d 899 (2006). However, on 26 June 2006, the U.S. Supreme Court decided *Washington v. Recuenco*, —— U.S. ——, 165 L. Ed. 2d 466 (2006), and held that "[f]ailure to submit a sentencing factor to the jury . . . is not structural error." *Id.* at ——, 165 L. Ed. 2d at 477. In response to the *Recuenco* decision, our Supreme Court held in *State v. Blackwell*, 361 N.C. 78, 638 S.E.2d 452 (2006), that according to *Recuenco*, the failure to submit a sentencing factor to the jury is subject to harmless error review. *Id.* at 44, 638 S.E.2d at 453. "The *Recuenco* Court also suggested that if the respondent in the case could have shown a lack of procedure for having a jury determine the applicability of aggravating factors, then the *Blakely* violation in that case would not have been harmless." *McQueen*, 181 N.C. App. at 422, 639 S.E.2d at 134 (citing *Recuenco*, —— U.S. at ——, 165 L. Ed. 2d at 471). Thus, in determining whether the *Blakley* error in defendant's case was harmless, we first must consider whether a procedural mechanism existed at his trial.

In response to *Blakely*, our General Assembly enacted a procedural mechanism for aggravating factors to be proven by a jury pursuant to North Carolina General Statutes, section 15A-1340.16. However, these amendments to section 15A-1340.16 are not applicable to defendant's case involving a crime that occurred in May of 2002. Section 15A-1340.16, in effect at the time of defendant's trial, did not provide a procedural mechanism for aggravating factors to be presented to a jury. *See* N.C. Gen. Stat. § 15A-1340.16 (2003). In *Blackwell*, the Supreme Court faced a similar situation, and held that although this particular procedural mechanism may not have been available at the time of the defendant's trial, "[t]here is no meaningful difference between having a procedural mechanism and not using it, and not having a procedural mechanism at all." *Blackwell*, 361 N.C. at 46, 638 S.E.2d at 456. The Court further held that "even assuming this language in *Recuenco* was intended to limit the scope of federal harmless error analysis, it is of no practical consequence, as North Carolina law independently permits the submission of aggravating factors to a jury using a special verdict." *Id.* Having concluded that there was not a lack of procedural mechanism, the Supreme Court

applied a harmless error analysis pursuant to the holding in *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 47 (1999).

"Applying the Court's reasoning in *Blackwell* to the facts in the present case, we conclude that despite the exclusion of a procedural mechanism in the North Carolina General Statutes for the submission of aggravating factors in a charge of driving while impaired, a common law procedural mechanism existed through the use of a special verdict." *McQueen*, 181 N.C. App. at 423, 639 S.E.2d at 135 (citing *Blackwell*, 361 N.C. at 471, 638 S.E.2d at 456 (noting that the use of special verdicts in criminal trials "is well-settled under our common law")); *see also, State v. Underwood*, 283 N.C. 154, 163, 195 S.E.2d 489, 494 (1973) ("[S]pecial verdicts are permissible in criminal cases[.]"). Thus, we now review the *Blakely* error in defendant's case pursuant to *Neder*. The Court's holding in *Neder* requires us to "determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49, 638 S.E.2d at 458 (citing *Neder*, 527 U.S. at 9, 144 L. Ed. 2d at 47); *see also, McQueen*, 181 N.C. App. at 423, 639 S.E.2d at 135.

In defendant's case, the trial court found as an aggravating factor that: "The Offense was committed for the benefit of, or at the direction of, any criminal street [gang], with the specific intent to promote, further, or assist in any criminal conduct by gang members, and the defendant was not charged with committing a conspiracy." The evidence presented at defendant's trial showed that the victim, Morris Bennett ("Bennett") was on the corner of South and Enterprise streets in front of a convenience store in Durham, North Carolina, when he was approached by defendant and two other men. Testimony showed that the area of South and Enterprise streets is well-known for being the territory of members of the Bloods gang. At the time of the shooting, defendant was a member of the Eight-trey Gangster Crips, while Bennett was an admitted member of the rival Nine-trey Bloods gang. The evidence overwhelmingly indicated that defendant shot Bennett with the specific intent to promote and further the purpose of his own gang, the Eight-trey Gangster Crips. Bennett testified that defendant and his friends were never seen in the South-Enterprise area due to their "hav[ing] a beef with that side." Bennett admitted that he and his friends were members of the Bloods. Bennett stated that defendant and his friends were members of the Crips gang, while the South and Enterprise area was territory

of the Bloods gang. According to Bennett, defendant caused the confrontation with him and shot Bennett in order "[t]o get a little rank" and to "get [his] name out there, like out there in the streets, like [he's] trying to be big or whatever." Bennett confirmed that by this statement, he was referring to getting a rank in a particular gang.

Several police officers testified concerning the gang activity in the area of South and Enterprise, and stated that it is a well-known Blood territory. Officer Hope Allen testified that she previously had identified defendant as a member of the Eight-trey Gangster Crips following a gang-related retaliatory shooting at a nightclub. She stated that at the time of the prior shooting, defendant admitted to her that he was an Eight-trey Gangster Crip, and gave additional indicators of gang involvement such as language and terminology used, friends he kept, and by flagging or signing with the symbols and colors of a particular gang or set. Officer Allen also had identified Bennett as a member of the Nine-trey UBN Bloods, a rival gang of defendant's.

Sergeant Howard Alexander, the sergeant in charge of the Durham Police Department gang unit, testified that a Crip, such as defendant, being on South and Enterprise would be like someone "going to a Klan rally [and] shouting 'Black Power.'" He went on to state that with respect to gangs and gang territory, being in an area where you do not belong is a demonstration of disrespect. Sergeant Alexander testified that when defendant and his friends, all three of whom are Eight-trey Crips, walked into Blood territory, "[t]hey either were trying to get rank, they were trying to show heart, they were trying to show dominance—maybe they were looking for a confrontation." He testified that defendant and his friends knew this, and in his opinion, they knew there would be a confrontation, they were asking for trouble, and "asking for either to get shot or to get beat down."

Thus, the evidence was overwhelming and uncontroverted that "[t]he Offense was committed for the benefit of, or at the direction of, any criminal street [gang], with the specific intent to promote, further, or assist in any criminal conduct by gang members, and the defendant was not charged with committing a conspiracy." The error of not submitting this aggravating factor to the jury so that it could be found beyond a reasonable doubt was harmless error. Defendant's assignment of error is overruled, and his sentence is upheld.

**IN RE A.S. & S.S.**

[182 N.C. App. 139 (2007)]

No error.

Judges MCGEE and MCCULLOUGH concur.