STATE OF NORTH CAROLINA v. SONYA CASE HARRIS

No. COA05-111-2

(Filed 7 August 2007)

**Sentencing— *Blakely* error—harmless beyond reasonable doubt—joined with more than one other person to commit offense—armed with deadly weapon**

The trial court's *Blakely* error in a second-degree murder case in failing to submit to the jury the aggravating factors that defendant joined with more than one other person in committing the murder and was not charged with a conspiracy and that defendant was armed with a deadly weapon at the time of the offense was harmless beyond a reasonable doubt, because: (1) it made no difference that the *Blakely* error occurred at a resentencing hearing rather than at the conclusion of a jury trial; (2) there was overwhelming and uncontradicted evidence that defendant joined with more than one other person in the commission of the offense; (3) it is immaterial whether defendant and two others struck the victim simultaneously; (4) even if defendant's version of events were accepted, there was uncontradicted testimony that defendant and two others hit and kicked the victim in the head, and that the victim died of head trauma; (5) defendant concedes she was armed with a knife at the time of the crime, and defendant testified she was responsible for hitting and assaulting the victim even with a deadly weapon; and (6) there was overwhelming and uncontradicted evidence that defendant was armed with a deadly weapon at the time of the crime.

Appeal by Defendant from judgment dated 9 July 2004 by Judge E. Penn Dameron in Superior Court, Henderson County. Heard by this Court on 11 October 2005, and opinion filed 3 January 2006, finding sentencing error and remanding for resentencing. Remanded to this Court by order of the North Carolina Supreme Court for reconsideration in light of *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006).

*Attorney General Roy Cooper, by Assistant Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant-Appellant.*

McGEE, Judge.

This case comes before us on remand from the North Carolina Supreme Court for reconsideration in light of its recent decision in *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied, Blackwell v. North Carolina*, —— U.S. ——, 167 L. Ed. 2d 1114 (2007). Pursuant to *Blackwell*, and for the reasons stated herein, we hold the trial court's *Blakely* error was harmless beyond a reasonable doubt.

Sonya Case Harris (Defendant) was indicted on 8 October 2001 on a charge of second-degree murder. Defendant's case was joined for trial with the cases of Harlan Ponder and Jason Ponder (collectively the Ponders). Defendant and the Ponders were convicted of second-degree murder by a jury. The trial court found three aggravating factors and sentenced Defendant in the aggravated range to a term of 276 months to 341 months in prison. Defendant appealed the conviction and sentence. In an unpublished opinion, *State v. Ponder*, 163 N.C. App. 613, 594 S.E.2d 258 (2004), our Court affirmed Defendant's conviction but remanded her case for resentencing.

The trial court conducted a resentencing hearing on 6 July 2004, six working days after the United States Supreme Court decided *Blakely*. The trial court found two aggravating factors: (1) that Defendant "joined with more than one other person in committing the offense and was not charged with committing a conspiracy[,]"; and (2) that Defendant "was armed with a deadly weapon at the time of the crime." The trial court again sentenced Defendant in the aggravated range to a term of 276 months to 341 months in prison.

Defendant appealed, and our Court determined that Defendant was sentenced in violation of *Blakely*, and remanded the case for resentencing. *See State v. Harris*, 175 N.C. App. 360, 367-68, 623 S.E.2d 588, 592-93 (2006). Our Supreme Court issued an order on 29 December 2006 "(1) vacating that portion of the Court of Appeals opinion ordering remand to the trial court for resentencing and (2) remanding to the Court of Appeals for reconsideration in light of . . . *Blackwell*[.]" The 29 December 2006 order also stated that "[t]he Court of Appeals opinion remains undisturbed in all other respects." We now determine whether the *Blakely* error in Defendant's resentencing, as determined in our previous opinion, was harmless beyond a reasonable doubt, or whether Defendant is entitled to a new sentencing hearing.

In *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455. In *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, *reh'g denied*, 542 U.S. 961, 159 L. Ed. 2d 851 (2004), the Supreme Court further held:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings.

*Id.* at 303-04, 159 L. Ed. 2d at 413-14 (internal citations omitted).

In *Blackwell*, our Supreme Court held that in accordance with *Washington v. Recuenco*, 548 U.S. ——, 165 L. Ed. 2d 466 (2006), *Blakely* error is subject to harmless error review. *Blackwell*, 361 N.C. at 44, 638 S.E.2d at 455. "In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Id.* at 49, 638 S.E.2d at 458 (citing *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 47 (1999)). Our Supreme Court further held that "[a] defendant may not avoid a conclusion that evidence of an aggravating factor is 'uncontroverted' by merely raising an objection at trial. Instead, the defendant must 'bring forth facts contesting the omitted element,' and must have 'raised evidence sufficient to support a contrary finding.' " *Id.* at 50, 638 S.E.2d at 458 (quoting *Neder*, 527 U.S. at 19, 144 L. Ed. 2d at 53).

## I.

In support of her argument that the *Blakely* error in her resentencing hearing was not harmless, Defendant first argues that "no jury had been [e]mpaneled to which special verdict forms could have been submitted." Defendant relies upon the following language from *Recuenco*:

> If [the] respondent is correct that Washington law does not provide for a procedure by which his jury could have made a finding

pertaining to his possession of a firearm, that merely suggests that [the] respondent will be able to demonstrate that the *Blakely* violation *in this particular case* was not harmless.

*Recuenco*, 548 U.S. at ——, 165 L. Ed. 2d at 474.

However, in *Blackwell*, our Supreme Court indicated that the lack of a procedural mechanism for submission of aggravating factors to a jury was immaterial to a harmless error analysis. *See Blackwell*, 361 N.C. at 46, 638 S.E.2d at 456 (stating that "it logically makes no difference whether the trial judge could submit the issue to the jury, because in every instance of *Blakely* error, the judge did not properly do so."). Nevertheless, in *Blackwell*, our Supreme Court recognized that "North Carolina law independently permits the submission of aggravating factors to a jury using a special verdict." *Id.*

In the present case, Defendant argues that because she appeals from a resentencing hearing at which no jury was empaneled, there was no jury to which special verdict forms could have been submitted. While this is true, this is a distinction without a difference. Had the trial court empaneled a jury, a procedural mechanism did exist by which to submit the aggravating factors to the jury. It makes no difference that the *Blakely* error in the present case occurred at a resentencing hearing rather than at the conclusion of a jury trial, as in *Blackwell*. In both cases, *Blakely* error occurred. Our task is to determine whether or not the *Blakely* error in the present case was harmless beyond a reasonable doubt.

II.

Defendant also argues that because she disputed joining with more than one other person in the commission of the offense, the evidence was not overwhelming and uncontradicted as to the aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(2). Therefore, Defendant argues, the *Blakely* error at her resentencing hearing was not harmless. We disagree.

N.C. Gen. Stat. § 15A-1340.16(d)(2) (2005) provides: "The following are aggravating factors: . . . (2) The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." "The plain language of [N.C.G.S. § 1340.16(d)(2)] requires the participation of [the] defendant and at least two others." *State v. Little*, 163 N.C. App. 235, 244, 593 S.E.2d 113, 118, *disc. review denied*, 358 N.C. 736, 602 S.E.2d 366 (2004).

At the resentencing hearing, Captain Doug Jones (Captain Jones) with the Hendersonville Police Department, testified that he investigated the death of David Boyd (Mr. Boyd), who died of head trauma on 22 July 2001. Captain Jones testified that he spoke with Robert Banks (Mr. Banks), who witnessed the beating of Mr. Boyd in the vicinity of the Hawkins Glass Company in Hendersonville. Mr. Banks told Captain Jones he saw Defendant "screaming at" Mr. Boyd and "kicking" Mr. Boyd. Mr. Banks also told Captain Jones that Defendant "fell down at which time [Defendant's] boyfriend Harlan Ponder came over and began assisting [Defendant] in fighting with [Mr. Boyd]." Mr. Banks also told Captain Jones that Harlan Ponder held Mr. Boyd around the neck while Defendant kicked Mr. Boyd in the head and in the ribs, and hit Mr. Boyd in the face "around 50 blows." Mr. Banks told Captain Jones that Harlan Ponder's son, Jason Ponder, then joined Defendant and Harlan Ponder and the three of them kicked Mr. Boyd in the torso and hit Mr. Boyd in the head.

Captain Jones also testified that he spoke with Lisa Smith (Ms. Smith), who had been housed with Defendant at a women's correctional facility in Raleigh. Ms. Smith gave a statement to Captain Jones in which she said that Defendant told Ms. Smith about beating Mr. Boyd. Specifically, Defendant told Ms. Smith that on the day of Mr. Boyd's death, Defendant had been "doing" drugs and drinking, and had "passed out[.]" Defendant "woke up" to find Mr. Boyd's hands "down her pants." Captain Jones further testified that according to Ms. Smith, Defendant became "very upset" and, along with the Ponders, began kicking and hitting Mr. Boyd. Captain Jones also testified that Defendant was not charged with conspiracy.

Defendant testified that she was in the vicinity of Hawkins Glass Company on 22 July 2001. Defendant testified that she was drunk and was lying down, and that Mr. Boyd was "cussing" at her. Defendant testified that "when they say I kicked [Mr. Boyd], I didn't mean to, but when I started to get up I made contact with [Mr. Boyd]." Defendant further testified that she then "smacked" Mr. Boyd, who was sitting, twice in the face. Defendant testified that Mr. Boyd grabbed her leg, causing her to fall. Defendant got up and hit Mr. Boyd a third time in the face. Defendant testified that Sandra Seay (Ms. Seay), who was Mr. Boyd's girlfriend, said she was going to call 911, and that this made Defendant mad. Defendant then started fighting with Ms. Seay. Defendant testified that while she was fighting with Ms. Seay, she looked back and saw that Harlan Ponder, who was Defendant's boyfriend, had Mr. Boyd in a chokehold. Defendant also testified as

STATE v. HARRIS

[185 N.C. App. 285 (2007)]

follows: "I guess because [Mr. Boyd] had caused me to fall, Jason [Ponder] or Harlan [Ponder], one, . . . jumped in. I don't know what they did. I never [saw] anything they [did] to [Mr. Boyd]." Defendant testified that she never joined with the Ponders in assaulting Mr. Boyd. Defendant also testified that there was never a time when all three of them simultaneously hit or kicked Mr. Boyd.

Defendant argues the evidence presented at the resentencing hearing was conflicting. Pursuant to Defendant's version of events, Defendant argues she did not join with the Ponders in assaulting Mr. Boyd; Defendant argues that her assault on Mr. Boyd preceded the assault by the Ponders. While we agree that the version of events presented by Captain Jones differed from the version presented by Defendant, we hold there was overwhelming and uncontradicted evidence that Defendant joined with more than one other person in the commission of the offense. Defendant testified that she struck Mr. Boyd three times in the face. According to Defendant, at least one of the Ponders then "jumped in," though Defendant did not see what "they [did] to [Mr. Boyd]." Captain Jones testified that according to Mr. Banks and Ms. Smith, Defendant and the Ponders hit and kicked Mr. Boyd, although according to their version of events, Defendant and the Ponders struck Mr. Boyd simultaneously. We hold that it is immaterial whether Defendant and the Ponders struck Mr. Boyd simultaneously. Even if we accept Defendant's version of events, there is uncontradicted testimony that Defendant and the Ponders hit and kicked Mr. Boyd in the head, and that Mr. Boyd died of head trauma. Accordingly, there is uncontradicted testimony that all three of them participated in the second-degree murder of Mr. Boyd. Therefore, there was overwhelming and uncontroverted evidence that Defendant "joined with more than one other person in committing the offense and was not charged with committing a conspiracy." *See* N.C.G.S. § 15A-1340.16(d)(2).

III.

The trial court also found an aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(10) (2005), which provides: "The following are aggravating factors: . . . (10) The defendant was armed with or used a deadly weapon at the time of the crime." As to this aggravating factor found by the trial court judge, Defendant concedes that she testified she was armed with a knife at the time of the crime. Moreover, Defendant testified that she was "responsible for hitting [Mr. Boyd] [and] assault[ing] . . . [Mr. Boyd], even with a deadly weapon." However, Defendant argues her testimony at the resentencing hearing

was not preceded by appropriate warnings as to its effect. Therefore, Defendant argues that her admission must be given no weight.

However, even if we do not give any weight to Defendant's testimony that she had a knife and used it on Mr. Boyd, we hold there was overwhelming and uncontradicted evidence of this aggravating factor. Captain Jones testified that Ms. Smith told him that Defendant had a knife and had "carved some type of markings on [Mr. Boyd's] back." Moreover, the State introduced a photograph of Mr. Boyd showing the markings on his back. Captain Jones also testified that the medical examiner determined that the markings on Mr. Boyd's back were inflicted prior to Mr. Boyd's death. We hold this was overwhelming and uncontradicted evidence that Defendant was armed with a deadly weapon at the time of the crime.

Except as herein modified, the opinion filed by this Court on 3 January 2006 remains in full force and effect.

No prejudicial error.

Judge GEER concurs.

Judge WYNN concurs in the result only.