STATE OF NORTH CAROLINA
v.
JOHNNIE ROWE
No. COA08-639
Court of Appeals of North Carolina
Filed March 17, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.
Russell J. Hollers III, for defendant-appellant.
WYNN, Judge.
Following his conviction for assault with a deadly weapon inflicting serious injury, Defendant appeals. After careful review, we hold that Defendant received a trial free of prejudicial error.
At trial, Alonzo Conner testified that on 24 February 2007, he bought crack cocaine and was led to Defendant's house to smoke by a female friend. Mr. Conner admitted that he occasionally "sponsored," or provided crack to individuals who did not have crack in return for their company and a place to smoke. Mr. Conner recalled that when he and his female friend arrived at Defendant's house, they met Defendant and his wife and three others. Mr. Conner stated that he "sponsored" everyone in Defendant's home, and they became involved in a four hour conversation about politics and spirituality. Mr. Conner also stated that he returned to Defendant's house on 25 and 26 February to smoke crack with Defendant.
Mr. Conner returned to Defendant's house on 27 February 2007, where he "sponsored" a $10 piece of crack for Defendant and his wife, and an older man identified as "Pop." They all smoked, laughed and talked for up to one-and-a-half hours before all except Mr. Conner ran out of crack. As Mr. Conner began to smoke the last of his crack, Defendant hit him in the back of the head, knocking him to the floor. Mr. Conner recalled that when he "jumped up," Defendant began stabbing him.
Defendant's trial testimony differed substantially from the testimony given by Mr. Conner. Defendant testified that Mr. Conner only stayed at his house for about 30 minutes on 24 February 2007, claiming to be a Jehovah's Witness. Mr. Conner did not smoke any crack on that day, and Defendant did not see Mr. Conner again until 27 February 2007. Defendant stated that on that date, he, his wife, and "Pop" were sitting and talking when Mr. Conner walked into the house unannounced. Without invitation or permission, Mr. Conner "stood on the walk and proceeded to take his crack pipe out and put some crack in it and then beginning to smoke crack."
Defendant testified that he repeatedly told Mr. Conner he could not smoke crack in his house, and demanded Mr. Conner to leave. Mr. Conner eventually stated in response, "I'm not going anywhere," and "Yeah, I'm taking over." Defendant stated that Mr.Conner then sat in a chair next to Defendant and took out another piece of crack to smoke. In response, Defendant jumped up, grabbed a knife from the stove, and asked Mr. Conner: "You're not going to leave my house?" When Mr. Conner jumped up in response, Defendant began "pecking at him" with the knife to force Mr. Conner to leave, but not intending to hurt him. Mr. Conner resisted Defendant's attack by holding Defendant off with his arm, and then running from the living room into the bedroom. Defendant followed Mr. Conner into the bedroom, "pecked at him" a few more times, and forced Mr. Conner back into the living room. There, according to Defendant's testimony, Mr. Conner said, "Okay, okay. I'll leave."
Tyrone Jones testified that he heard Mr. Conner say "Okay, okay, stop," and then saw Mr. Conner stumble out of the house and into the backyard, where he collapsed. Mr. Jones saw Defendant and his wife leaving the house a few minutes after the incident, before medical personnel and police arrived. Medical personnel later determined that Mr. Conner suffered approximately ten stab wounds of various depths, but the most severe penetrated Mr. Conner's chest cavity and caused a collapsed lung.
Police Investigator Dave Cloutier testified that he was one of the first responders on the scene, where he recognized Mr. Conner as he lay in the backyard. Investigator Cloutier was involved in the investigation from that time until Defendant's apprehension and arrest several days later in Mount Olive.
Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury, and convicted by a jury of assault with a deadly weapon inflicting serious injury. Defendant appeals from this conviction, arguing the trial court erred by: (I) refusing to instruct the jury on defense of habitation; (II) allowing Investigator Cloutier's testimony on Mr. Conner's character for truthfulness and nonviolence; and (III) allowing Investigator Cloutier's testimony on Defendant's honesty.

I.
In his first assignment of error, Defendant argues that the trial court's failure to instruct the jury on defense of habitation constituted plain error.[1] We disagree.
A trial court must give an instruction, at least in substance, that is a correct statement of the law and supported by substantial evidence. State v. Napier, 149 N.C. App. 462, 463-64, 560 S.E.2d 867, 868 (2002) (citation omitted). However, this Court will not find that the failure to give an instruction amounted to plain error unless the jury probably would have reached a different verdict had the instruction been given. State v. Morgan, 315 N.C. 626, 645, 340 S.E.2d 84, 96 (1986) (citing State v. Odom, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983)). "[E]ven when the `plainerror' rule is applied, `[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" Odom, 307 N.C. at 660-61, 300 S.E.2d at 378 (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).
At Defendant's trial, the trial court gave the following instruction on self-defense within the home:
If the Defendant was not the aggressor and he was in his own home, he could stand his ground and repel force with force regardless of the character of the assault made upon him. However, the Defendant would not be excused if he used excessive force.
Nonetheless, Defendant argues that the evidence, viewed in a light most favorable to him, see State v. Pelham, 164 N.C. App. 70, 75, 595 S.E.2d 197, 201 (2004) (citations omitted), required the trial court to instruct on defense of the habitation pursuant to N.C. Gen. Stat. § 14-51.1(a) & (b) (2007):
A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (I) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.
(b) A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.
The evidence viewed in a light most favorable to Defendant tended to show that Mr. Conner entered Defendant's house on 27February 2007 and began smoking crack. Defendant informed Mr. Conner more than once that he could not smoke in his house, and asked Mr. Conner to leave, but Mr. Conner refused. Defendant admitted that he picked up a knife and began "pecking" at Mr. Conner to force him to leave. Therefore, the most favorable view of this evidence to Defendant shows that he used force to terminate Mr. Conner's stay at his house, after Mr. Conner began committing a felony in his home. Assuming, without deciding, that this view of the evidence was sufficient to make Defendant entitled to an instruction on defense of habitation, we nonetheless find no reasonable probability that the jury would have reached a different verdict if the instruction had been given. Morgan, 315 N.C. at 645, 340 S.E.2d at 96.
Like self-defense within the home, on which the trial court instructed, defense of habitation is tempered by the prohibition against use of excessive force. State v. McCombs, 297 N.C. 151, 157, 253 S.E.2d 906, 911 (1979); N.C.P.I.-Crim. 308.80 (2008). InMcCombs, our Supreme Court emphasized that the amount of force employed in defense of the habitation must be reasonable under the circumstances:
[I]t is well settled that a person is entitled to defend his property by the use of reasonable force, subject to the qualification that, in the absence of a felonious use of force on the part of the aggressor, human life must not be endangered or great bodily harm inflicted. Likewise, when a trespasser invades the premises of another, the latter has the right to remove him, and the law requires that he should first request him to leave, and if he does not do so, he should lay his hands gently upon him, and if he resists, he may use sufficient force to remove him, taking care, however, to use no more force than is necessary to accomplish that object.
McCombs, 297 N.C. at 157, 253 S.E.2d at 911 (citations omitted). The requirement that a person defending his home may use only reasonable force, as opposed to excessive or unlimited force, was undisturbed by enactment of N.C. Gen. Stat. § 14-51.1. See State v. Blue, 356 N.C. 79, 88-89, 565 S.E.2d 133, 139 (2002).
Given the evidence in this case, even viewed most favorably to Defendant, we find no reasonable probability that the jury would have reached a different verdict if the trial court instructed on defense of habitation. Defendant admitted that he was the aggressor, that he knew Mr. Conner was unarmed, and that he "pecked at" Mr. Conner several times with a knife. As a result, Mr. Conner sustained numerous stab wounds and a collapsed lung. On these facts, we see no reasonable probability that the jury would have found that Defendant employed a reasonable amount of force to terminate Mr. Conner's stay at his home. Accordingly, we hold that the trial court's refusal to instruct on defense of habitation was not plain error.

II.
In his next assignment of error, Defendant argues that the trial court erred when it allowed Investigator Cloutier to testify about Mr. Conner's honesty and peacefulness. Specifically, Defendant takes issue with the following exchange:
Q: Okay. Would you describe how would you describe [Mr. Conner] based on, I guess, you [sic] opinion as to his character.
Mr. Smith: Objection. The Court: I'll sustain that.
Q: How would you describe Alonzo Conner?
A: Alonzo is Alonzo is Alonzo. He's a unique person. He's 
Mr. Smith: Objection.
The Court: Overruled.
A: He's easy going. He's honest. I've never known him to be dishonest with me. He is not violent, but he gets into trouble, a little bit of trouble. But he's got a unique personality.
Q: And how is his personality unique?
Mr. Smith: Objection.
The Court: Overruled.
This exchange occurred during the State's case-in-chief, while the prosecutor was conducting a direct-examination of Investigator Cloutier.
N.C. Gen. Stat. § 8C-1, Rule 404 (2007) governs the admissibility of character evidence, in relevant part, as follows:
(a) Character evidence generally.Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . .
(2) Character of victim.Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .
While an accused may initially offer evidence of a pertinent character trait of the victim, it is well-established that the prosecution may not initially offer such evidence in a non-homicide case. Id.; State v. Jones, 137 N.C. App. 221, 232, 527 S.E.2d 700, 707, disc. review denied, 352 N.C. 153, 544 S.E.2d 235 (2000). Still, "[t]he admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." State v. Quick, 329 N.C. 1, 26, 405 S.E.2d 179, 194 (1991) (citation omitted).
Here, Defendant did not initiate evidence of Mr. Conner's character for dishonesty or violence. The testimony above was elicited on Investigator Cloutier's direct-examination, during the State's case-in-chief. Moreover, it was not introduced by the prosecution for the purpose of rebutting evidence previously offered by Defendant. Thus, this evidence was inadmissible under N.C. Gen. Stat. § 8C-1, Rule 404(a)(2).
However, the State argues that admission of this testimony did not prejudice Defendant because the evidence was undisputed that he was the aggressor. Indeed, Defendant admitted he was the aggressor, even though he knew Mr. Conner was not armed. Moreover, Defendant admitted "pecking" at Mr. Conner, even though Mr. Conner posed no physical threat. Therefore, Defendant has failed to show that Investigator Cloutier's testimony about Mr. Conner's honesty and peacefulness was prejudicial, and we cannot conclude that the jury would have reached a different verdict if it had been excluded. Quick, 329 N.C. at 26, 405 S.E.2d at 194. This assignment of error is overruled.

III.
Finally, Defendant argues that the trial court erred when it allowed Investigator Cloutier to testify regarding Defendant's honesty. On cross-examination, defense counsel asked Investigator Cloutier for his lay opinion on how Defendant might have received injuries found on his hands after his arrest. Defendant assigns error to Investigator Cloutier's responses, which occurred as follows:
A: That it could have happened during the  that it happened during the fight with Mr. Conner.
Q: But you didn't ask [Defendant] to try to get a factual basis of how this supposed injury occurred?
A: I didn't. In my opinion, I had already ascertained that he wasn't going to be honest with my [sic] anyway. So I felt there was really no need to ask him how he got the injuries.
Defendant did not object following Investigator Cloutier's response, so he urges this Court to find that admission of this testimony amounted to plain error.
Regarding character evidence of an accused, N.C. Gen. Stat. § 8C-1, Rule 404(a)(1) (2007) says:
Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except . . . evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.
Here, Investigator Cloutier's testimony was elicited by defense counsel on cross-examination, and it pertained to Defendant's honesty, a pertinent character trait. Therefore, this testimony was admissible under N.C. Gen. Stat. § 8C-1, Rule 404(a)(1) and the trial court did not err by allowing it. This assignment of error is overruled.
No prejudicial error. Chief Judge MARTIN and Judge STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Although Defendant did not request this instruction at trial, or object to the trial court's instructions, he contends that this issue is preserved for full review by this Court because he raised the issue in a motion for appropriate relief (MAR) at the sentencing hearing. Assuming, arguendo, that this procedure could properly preserve an issue for this Court's full review, Defendant's MAR was improperly executed. First, it was an impermissible oral motion because the judge hearing the MAR was not the same judge "who presided at trial," and second, Defendant's MAR contained no clear request for relief. N.C. Gen. Stat. § 15A-1420(a)(1)(a)(2) & -(a)(1)(b) (2007). Thus, we review this issue under the plain error standard.